## BAKS v MOROUN

Docket Nos. 184794, 188874. Submitted August 13, 1997, at Detroit. Decided January 23, 1998, at 9:05 A.M.

Victoria M. Baks and others brought an action in the Oakland Circuit Court against Manuel J. Moroun and others, alleging a shareholder derivative claim, an oppressed minority shareholder claim, and breach of a stock restriction agreement with regard to a dispute concerning the disposition and control of a family business, Cen-Tra, Inc. The court, Rudy J. Nichols, J., granted the defendants' motions for partial summary disposition on the basis of the expiration of the period of limitation applicable to each claim. The plaintiffs appealed as of right (Docket No. 184794) and by leave granted (Docket No. 188874) from the orders. The appeals were consolidated.

The Court of Appeals *held*:

1. The court properly granted the defendants' respective motions for summary disposition by applying the limitation provision contained in MCL 450.1541a(4); MSA 21.200(541a)(4) to the shareholder oppression actions brought under § 489 of the Business Corporation Act, MCL 450.1489; MSA 21.200(489).

2. Section 489(1) does not create a cause of action. Rather, it identifies persons with standing to bring a derivative action, courts with jurisdiction over such actions, and proper venue in such actions.

3. Section 541a(1) fixes or declares the duty owed by corporate fiduciaries to their corporate principals. Sections 541a(2) and (3) speak of the information that may be relied on in carrying out those responsibilities on behalf of the corporation. Section 541a(4) establishes a two-year period of limitation, measured from the date the breach of such duty is discovered or reasonably should be discovered, combined with a three-year period of repose, to govern actions based on breach of such duties.

4. The court properly held that § 541a(4) establishes the period of limitation for all actions filed against corporation officers and directors alleging conduct that violates the standard found in § 541a or its common-law antecedents.

5. The fraudulent concealment statute, MCL 600.5855; MSA 27A.5855, is not applicable if a claim brought against a corporate officer or director is based on conduct that is governed by the period of repose contained in § 541a(4). Any claims against corporate officers and directors that are subject to the limitation period found in § 541a(4) are barred more than three years after the date of the occurrence, regardless of when the plaintiff learned of the breach of duty and despite the fact that corporate officers and directors may have fraudulently concealed the occurrence.

6. The court, in ruling with regard to the claim of breach of fiduciary duty, correctly observed that it was the simple failure by defendant Manuel J. Moroun to offer to CenTra the corporate opportunity to purchase the shares of PAM Transportation that created a possible cause of action, thus triggering the running of the two-year discovery provision contained in § 541a(4). There was no genuine issue of material fact regarding when the claim accrued. In addition, the plaintiffs, as directors of both CenTra and its subsidiary, Central Transport, Inc., were chargeable with knowledge regarding the transactions that was available in the corporate books and records. The two-year discovery period found in § 541a(4) began to run by December 1989 when the plaintiffs should have discovered the defendants' breach of fiduciary duty. The claim expired before the plaintiffs filed the claim in September 1992.

7. The plaintiffs did not state a claim for breach of the stock restriction agreement, but only alleged that defendants Manuel J. Moroun and Ronald Lech breached an express or implied contract to perform their duties as officers and directors of CenTra. There is no merit to the plaintiffs' contention that Manuel J. Moroun breached the agreement in his individual capacity. The six-year limitation period for breach of contract, MCL 600.5807(8); MSA 27A.5807(8), did not apply to the claim.

8. The law of the case doctrine was inapplicable to the trial court's ruling denying the plaintiffs' claim that the defendants waived the statute of limitations defense in a stipulated order.

9. The court's orders must be affirmed with the exception of the plaintiffs' claim in Docket No. 188874 regarding the warrants to purchase additional shares of stock of PAM Transportation.

Affirmed.

HOEKSTRA, J., dissenting, stated that the six-year period of limitation of MCL 600.5813; MSA 27A.5813 is applicable to a suit brought pursuant to MCL 450.1489; MSA 21.200(489), rather than the period set forth in MCL 450.1541a(4); MSA 21.200(541a)(4). Section 489 creates a new cause of action for shareholders in closely held cor-

porations. The Legislature did not intend for the statute of limitations governing a cause of action brought by shareholders of a publicly held corporation to also apply to a cause of action brought by shareholders of a closely held corporation. The court's orders should be reversed.

1. CORPORATIONS — ACTIONS — LIMITATION OF ACTIONS.

MCL 450.1541a(4); MSA 21.200(541a)(4) establishes the period of limitation for all actions filed against corporate officers and directors alleging conduct that violates the standard found in § 541a or its common-law antecedents; the limitation period contained in § 541a(4) applies to shareholder oppression actions brought under MCL 450.1489; MSA 21.200(489).

2. CORPORATIONS — ACTIONS.

MCL 450.1489(1); MSA 21.200(489)(1) does not by its terms create a cause of action.

3. CORPORATIONS — ACTIONS — LIMITATION OF ACTIONS.

An action for breach of fiduciary duty against a corporate officer or director, whether under MCL 450.1489; MSA 21.200(489) or otherwise, is subject to the period of limitation set forth in MCL 450.1541a(4); MSA 21.200(541a)(4) if the action alleges conduct that violates the standard of conduct for directors and officers found in § 541a(1).

4. CORPORATIONS — ACTIONS — FRAUDULENT CONCEALMENT — LIMITATION OF ACTIONS.

The fraudulent concealment statute, MCL 600.5855; MSA 27A.5855, is not applicable if a claim brought against a corporate officer or director is based on conduct that is governed by the period of repose contained in MCL 450.1541a(4); MSA 21.200(541a)(4); any claims against corporate officers and directors that are subject to the limitation period found in § 541a(4) are barred more than three years after the date of the occurrence, regardless of when the plaintiff learned of the breach of duty and despite the fact that corporate officers and directors may have fraudulently concealed the occurrence.

*Jaffe, Raitt, Heuer & Weiss, P.C.* (by *R. Christopher Cataldo* and *Brian G. Shannon*), for Victoria M. Baks and Florence M. McBrien.

*Schaden, Wilson & Katzman* (by *Bruce O. Wilson*), for Victoria M. Baks.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton*
(by *William P. Hampton*), for Florence M. McBrien.

*Condit, McGarry & Schloff, P.C.* (by *Richard P.
Condit*), for Manuel J. Moroun, MJM First Limited
Partnership, 5973 Corp., and Matthew Moroun.

*Hyman & Lippitt* (by *Norman L. Lippitt* and *H.
Joel Newman*), for Ronald Lech.

*Seyburn, Kahn, Ginn, Bess, Deitch and Serlin,
P.C.* (by *Joel H. Serlin* and *Barry M. Rosenbaum*), for
AMMEX, Inc., and Lakeshore Properties of Michigan,
Inc.

Before: WAHLS, P.J., and TAYLOR and HOEKSTRA, JJ.

TAYLOR, J. In these consolidated appeals involving
shareholder derivative and shareholder oppression
claims, plaintiffs appeal as of right an order granting
defendants' motion for partial summary disposition in
Docket No. 184794, and by leave granted an order
granting partial summary disposition in Docket No.
188874, both orders being predicated on statute of
limitations grounds, pursuant to MCR 2.116(C)(7).
We affirm.

These cases involve a dispute among the siblings of
the Moroun family regarding the disposition and con-
trol of a family business, CenTra, Inc., a holding com-
pany that owns numerous subsidiaries whose opera-
tions range from trucking terminals to the ownership
of the Ambassador Bridge and duty-free shops. The
companies that became CenTra were founded or
acquired in the late 1940s by T. J. Moroun, the father
of plaintiffs-appellants Victoria M. Baks and Florence
M. McBrien, plaintiff-appellee Agnes Anne Moroun

(hereafter A. A. Moroun), and defendant-appellee
Manual J. Moroun (hereafter M. J. Moroun).[1] Over the
years, T. J. Moroun transferred ownership of these
companies to his four children. Plaintiffs claim that in
the early 1980s, M. J. Moroun, with the assistance of
defendant Ronald Lech, executive vice president of
CenTra, and Norman Harned, CenTra's chief financial
officer, began operating CenTra as his "personal
fiefdom," dominating and controlling virtually every
aspect of its operations and assets, in such a manner
that plaintiffs were shut out of CenTra's operations,
denied basic information about CenTra's affairs, and
were relegated to oppressed-shareholder status. In
their first amended complaint filed on September 30,
1992, plaintiffs asserted, among other claims, a share-
holder derivative claim alleging that M. J. Moroun and
Lech breached their fiduciary duties under MCL
450.1541a; MSA 21.200(541a) by usurping corporate
opportunities and what plaintiffs denominate "an
oppressed minority shareholder action under MCL
450.1489; MSA 21.200(489)," alleging that the conduct
of M. J. Moroun and Lech was "willfully unfair, fraud-
ulent, illegal and oppressive to CenTra and plaintiffs."
In their third amended complaint, plaintiffs added a
claim that M. J. Moroun breached a stock restriction
agreement by usurping CenTra's opportunities and
diverting its assets for his own benefit and the benefit
of his son, defendant Matthew Moroun, and entities
owned or controlled by them. Among the alleged
transactions involving the usurpation and diversion of
corporate opportunities, plaintiffs identify those

---

[1] A. A. Moroun originally was aligned with her sisters, but aligned her-
self with her brother in May 1993. Throughout this opinion, "plaintiffs"
will be used to refer to only Baks and McBrien.

involving MJM First Limited Partnership, AMMEX, Inc., Lakeshore Properties of Michigan, Inc., and PAM Transportation.

I

A

The principal issue in these cases is whether the trial court erred in granting defendants' respective motions for summary disposition by applying the limitation provision contained in MCL 450.1541a(4); MSA 21.200(541a)(4) to "shareholder oppression" actions brought under MCL 450.1489; MSA 21.200(489) of the Michigan Business Corporation Act (MBCA).[2] MCL 450.1489; MSA 21.200(489)[3] provides in pertinent part:

---

[2] A trial court's grant or denial of summary disposition is a question of law that will be reviewed de novo. *Michigan Mut Ins Co v Dowell*, 204 Mich App 81, 85-86; 514 NW2d 185 (1994). When reviewing a motion for summary disposition under MCR 2.116(C)(7), the plaintiff's well-pleaded allegations are accepted as true and are construed in the plaintiff's favor, "unless specifically contradicted by the affidavits or other appropriate documentation submitted by the movant." *Patterson v Kleiman*, 447 Mich 429, 434, n 6; 526 NW2d 879 (1994). If the pleadings demonstrate that a party is entitled to judgment as a matter of law, or if affidavits or other documentary evidence show that there is no genuine issue of material fact, the trial court must render judgment without delay. If no facts are in dispute, whether the claim is statutorily barred is a question of law. *Harris v Allen Park*, 193 Mich App 103, 106; 483 NW2d 434 (1992).

[3] 1972 PA 284, § 489, added by 1989 PA 121, § 1, effective October 1, 1989. In their comment to § 489, Schulman, Moscow, and Lesser, Michigan Corporation Law and Practice (1993 Supp), p S-71, observe:

[Section 489] is drawn in large part from now repealed section 825, but there are significant changes in both the placement and language of the provision. It has been moved from chapter 8 (the dissolution chapter) and its language modified to avoid undue emphasis upon dissolution as a remedy for oppression. As a result, it becomes clear that a court need not focus on dissolution as the sole or even primary remedy for oppression; rather, a wide variety of remedies should be considered. The standard of oppression, however, has not been changed.

(1) A shareholder may bring an action in the circuit court of the county in which the principal place of business or registered office of the corporation is located, to establish that the acts of the directors or those in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation, or to the shareholder.

MCL 450.1541a; MSA 21.200(541a)[4] provides in pertinent part:

New language has been adopted making the provision inapplicable to actions by those holding shares listed on a national securities exchange or regularly quoted in the over-the-counter market. Thus, the reach of section 489 is limited to smaller or closely held corporations; the limitation assures that the section will operate in conformity with its original purpose, the protection of minority holders of untraded stock.

See also Schulman, Moscow, and Lesser, Michigan Corporation Law and Practice, § 4.22. Oppression (1996 Supp), p 128, and (1997 Supp), pp 129-130, and Bruno, *"Reasonable Expectations"—A Primer on an Oppressive Standard* (Parts 1 & 2), 71 Mich B J 434, 566 (1992).

[4] 1972 PA 284, § 541a, added by 1989 PA 121, § 1, effective October 1, 1989. The statutory precursors of § 541a were § 47 of the General Corporation Act, 1948 CL 450.47, which was replaced with MCL 450.1541; MSA 21.200(541), which provided:

(1) A director or an officer shall discharge the duties of his position in good faith and with that degree of diligence, care and skill which an ordinarily prudent man would exercise under similar circumstances in a like position. In discharging his duties, a director or an officer, when acting in good faith, may rely upon the opinion of counsel for the corporation, upon the report of an independent appraiser selected with reasonable care by the board, or upon financial statements of the corporation represented to him to be correct by the president or the officer of the corporation having charge of its books of account, or stated in a written report by an independent public or certified public accountant or firm of such accountants fairly to reflect the financial condition of the corporation.

(2) An action against a director or officer for failure to perform the duties imposed by this section shall be commenced within 3 years after the cause of action has accrued, or within 2 years after the time when the cause of action is discovered or should reasonably have been discovered, by a person complaining thereof, whichever sooner occurs.

(1) A director or officer shall discharge his or her duties as a director or officer including his or her duties as a member of a committee in the following manner:

(a) In good faith.

(b) With the care an ordinarily prudent person in a like position would exercise under similar circumstances.

(c) In a manner he or she reasonably believes to be in the best interests of the corporation.

*     *     *

(4) An action against a director or officer for failure to perform the duties imposed by this section shall be commenced within 3 years after the cause of action has accrued, or within 2 years after the time when the cause of action is discovered or should reasonably have been discovered, by the complainant, whichever occurs first.

As a point of departure for determining whether the trial court properly granted summary disposition in these cases, it is helpful to begin with the observation that § 489(1) does not by its terms create a cause of action. Rather, it identifies (1) persons with standing to initiate a derivative action (shareholders), (2) courts with jurisdiction over such actions (circuit

In 1989, § 541a replaced § 541. 1989 PA 121. In their comment to § 541a, Schulman, Moscow, and Lesser, Michigan Corporation Law and Practice (1997 Supp), p S-79,  observe:

Subsections (1) through (3) of this section replace subsection (1) of the now repealed section 541. The new provisions are based in part on Model Act sections 8.30 and 8.42, although unlike the Model Act, they combine the duties of directors and officers in one section. Subsection (1), which only slightly modifies the first sentence of the repealed section 541, is a clear statement of the directors' and officers' duties of good faith and due care. Subsection[s] (2) and (3), which describe the directors' and officers' ability to rely upon certain reports, information, and the like, provide a fuller and more precise statement of the right of reliance than is found in the present act. Subsection (4) is identical to repealed section 541(2).

court), and (3) proper venue in such actions (the county in which the principal place of business or registered office of the corporation is located). By virtue of § 489(2), such actions are available only to shareholders of corporations whose shares are neither traded on a national securities exchange nor regularly quoted in an over-the-counter market by one or more members of a national or affiliated securities association. Thus, § 489 dovetails with other sections that recognize that the circuit courts, as courts of equity under Const 1963, art 6, § 13, generally possess visitorial power over domestic corporations registered or having a principal place of business within their respective territories, MCL 450.1487; MSA 21.200(487) and MCL 450.1514; MSA 21.200(514), inter alia, and the common law. *Carpenter v Landman*, 192 Mich 544, 547; 159 NW 322 (1916); *Wojtczak v American United Life Ins Co*, 293 Mich 449, 453-454; 292 NW 364 (1940).

In comparison, § 541a(1) fixes or declares the duty owed by corporate fiduciaries to their corporate principals, while §§ 541a(2) and (3) speak of the types of information that may be relied upon in carrying out those responsibilities on behalf of the corporation, and § 541a(4) then establishes a two-year period of limitation, measured from the date the breach of such duty is discovered or reasonably should be discovered, combined with a three-year period of repose, to govern actions based on breach of such duties.

The first question presented is whether the trial court properly applied the limitation period contained in § 541a to plaintiffs' claims under § 489, or whether plaintiffs' claims under § 489 should be governed, as

plaintiffs argue, by the residual or "catch-all" statute of limitations, which provides:

> All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes. [MCL 600.5813; MSA 27A.5813.]

In addressing this issue, we start with the observations that the primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *People v Stanaway*, 446 Mich 643, 658; 521 NW2d 557 (1994); *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993). Statutory language should be construed reasonably, keeping in mind the purpose of the act. *Barr v Mt Brighton Inc*, 215 Mich App 512, 516; 546 NW2d 273 (1996). Nothing will be read into a statute that is not within the manifest intention of the Legislature as gathered from the act itself. *In re Marin*, 198 Mich App 560, 564; 499 NW2d 400 (1993). If reasonable minds can differ with regard to the meaning of a statute, judicial construction is appropriate. *Heinz v Chicago Rd Investment Co*, 216 Mich App 289, 295; 549 NW2d 47 (1996). The court must look to the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the purpose of the statute. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994); *In re Forfeiture of $5,264*, 432 Mich 242, 248; 439 NW2d 246 (1989).

Key to answering this threshold question is *Detroit Gray Iron & Steel Foundries, Inc v Martin*, 362 Mich 205; 106 NW2d 793 (1961), in which the Michigan Supreme Court held that an action brought by a

closely held corporation against a former director to
recover profits made by him at the corporation's
expense, through an alleged conspiracy that consti-
tuted fraudulent conduct against the corporation,
could not be maintained because it was not com-
menced within the six-year period of limitation pro-
vided in 1948 CL 450.47; Stat Ann 1959 Cum Supp
§ 21.47, which was the predecessor to both § 541 and
its successor, § 541a of the current act.[5] In *Detroit
Foundries*, the Court held:

> The difficulty with plaintiff's theory [that § 47 does not
> apply to suits by a corporation against its directors for mis-
> conduct involving the performance of their duties as direc-

---

[5] As noted in *Detroit Foundries*, at 207-208:

Section 47 of the Michigan general corporation act (CL 1948,
§ 450.47 [Stat Ann 1959 Cum Supp § 21.47]) reads:

"The directors of every corporation, and each of them, in the
management of the business, affairs, and property of the corpora-
tion, and in the selection, supervision and control of its committees
and of the officers and agents of the corporation, shall give the
attention and exercise the vigilance, diligence, care and skill, that
prudent men use in like or similar circumstances."

"Action may be brought by the corporation, through or by a
director, officer, or shareholder, or a creditor, or receiver or trus-
tee in bankruptcy, or by the attorney general of the State, on behalf
of the corporation against 1 or more of the delinquent directors,
officers, or agents for the violation of, or failure to perform, the
duties above prescribed or any duties prescribed by this act,
whereby the corporation has been or will be injured or damaged,
or its property lost, or wasted, or transferred to 1 or more of them,
or to enjoin a proposed, or set aside a completed, unlawful transfer
of the corporate property to one knowing the purpose thereof. The
foregoing shall in no way preclude or affect any action any individ-
ual shareholder or creditor or other person may have against any
director, officer, or agent for any violation of any duty owed by
them or any of them to such shareholder, creditor, or other person.
No director or directors shall be held liable for any delinquency
under this section after 6 years from the date of such delinquency,
or after 2 years from the time when such delinquency is discovered
by one complaining thereof, whichever shall sooner occur."

tors] is that plaintiff assumes that the first paragraph of section 47 creates a statutory cause of action for damages arising from a director's "ordinary negligence," as distinguished from what plaintiff would describe as a common-law right of action to redress loss caused by a director's deliberate and intentional fraud. In this plaintiff is mistaken.

Section 47 prescribes the standard by which a director's performance of his duties is to be measured. It puts in statutory language what this Court, quoting Thompson [on Corporations (3d ed), § 1376] and [1] Morawetz [on Private Corporation (2d ed), § 552], said in *Martin v Hardy* [251 Mich 413; 232 NW 197 (1930)]. This is the standard. Conduct below this standard, whether negligent or wilful, subjects a director to liability no greater than nor any less than he risked before enactment of the statutory provision. The concluding language of section 47 limiting actions against directors for conduct below the standard specified to 6 years from the date of delinquency or 2 years from the time of its discovery, "whichever shall sooner occur," radically alters the periods of limitations which would otherwise apply to actions against directors either for negligent conduct or fraud. CLS 1956, § 609.13 (Stat Ann 1959 Cum Supp § 27.605), and CLS 1956, § 609.20 (Stat Ann 1959 Cum Supp § 27.612).

The legislature's purpose in so doing is not clear. Perhaps it believed that qualified directors for Michigan corporations could not be found unless they could be assured that their conduct of their corporations' affairs could not be challenged after 2 years following disclosure to interested parties or, in any event, after 6 years from occurrence. Plaintiff quite correctly notes that the result is that a corporation defrauded or otherwise injured by a director, who owes fiduciary duties to his corporate victim, must sue within 2 years of its discovery of the wrong or within 6 years of its occurrence, whichever sooner occurs, or forever bear the loss. But, if the corporation is defrauded or otherwise injured by a stranger, it may sue within 2 years after discovery of the wrong regardless when it occurred. Unless our proffered explanation of the legislature's purpose is correct, another anomaly of the law here exists, but

it is an anomaly created by the legislature which this Court
is powerless to correct. [362 Mich 217-218.]

Although *Detroit Foundries* addressed a predecessor statute, the structure of the relevant provisions of the Business Corporation Act remains the same. Accordingly, we agree with defendants that the trial court properly held that § 541a(4) establishes the period of limitation for all actions filed against corporation officers and directors alleging conduct that violates the standard found in § 541a or its common-law antecedents.

That fatal flaw in plaintiffs' argument that *Detroit Foundries* is inapplicable rests on their assumption that § 541a creates a statutory cause of action against corporate directors and officers. *Detroit Foundries*, at 217, rejected precisely that contention, holding instead that § 47 established only the standard of conduct that applied to all actions against officers and directors. Under *Detroit Foundries*, any cause of action against an officer or director based upon the breach of the standard of conduct found in § 47 was subject to the period of limitation found in that section. Although the Legislature repealed the former Michigan General Corporation Act, *Detroit Foundries* remains good law, under well-established principles of statutory construction, *Advance Dry Wall Co v Regency Homes, Inc*, 20 Mich App 80, 84; 173 NW2d 827 (1969), because the standard of conduct for directors and officers previously found in § 47 is now found in § 541a. Accordingly, any action for breach of fiduciary duty against a corporate officer or director, whether under § 489 or otherwise, is subject to the period of limitation set forth in § 541a(4) if the action alleges conduct that violates the standard of conduct

for directors and officers found in § 541a(1). All plaintiffs' arguments fail because they assume erroneously that § 489 creates a cause of action separate and distinct from the cause of action created by § 541a, when neither section creates a cause of action at all, and both merely affect by whom, in what tribunal, according to what standard of fiduciary duty, and within what time frame such common-law actions shall be pursued, if at all.

B

Plaintiffs contend that the application of the "short" limitation period found in § 541a(4) directly contravenes the general purpose of the MBCA, as set forth in MCL 450.1103(c); MSA 21.200(103)(c), "[t]o give special recognition to the legitimate needs of close corporations," and the specific purpose of § 489, which is to permit suits to rectify a continuing pattern of minority oppression. Plaintiffs argue that "the application of § 541a(4) to § 489 would presume the existence of a schizophrenic legislature in Lansing a legislature intent on protecting minority shareholders from oppression while simultaneously intent on subverting that purpose." However, despite the misgivings of the Supreme Court expressed in *Detroit Foundries, supra,* the Legislature reduced the period of repose for filing claims from six years to three years, while retaining the shorter two-year discovery period, when it substantially reenacted § 47 first as part of § 541 and then as part of § 541a. We perceive no legislative inconstancy in consequence; the Legislature has made its policy judgment that three years is ample time to bring such actions for breach of fiduciary duty as the Legislature countenances, even if fraud

must be first ferreted out by diligent inquiry. The wisdom of that evaluation is not within our provenance to discuss. *Carver v McKernan*, 390 Mich 96, 100; 211 NW2d 24 (1973).

II

Notwithstanding that plaintiffs' § 489 claims are subject to the limitation period contained in § 541a(4), plaintiffs argue that, because M. J. Moroun fraudulently concealed his usurpation of corporate opportunities and other wrongs, the fraudulent concealment statute, MCL 600.5855; MSA 27A.5855, applies to preserve their shareholder derivative or oppressed minority shareholder claims.

Contrary to plaintiffs' argument, the fraudulent concealment statute is not applicable if a claim brought against a corporate officer or director is based on conduct that is governed by the period of repose contained in § 541a(4). This is a general principle of statutes of repose, as contrasted with statutes of limitations. In *O'Brien v Hazelet & Erdal*, 410 Mich 1; 299 NW2d 336 (1980), the Court considered a due process challenge to the constitutionality of the architects and engineers statute of repose, MCL 600.5839(1); MSA 27A.5839(1), where the plaintiffs alleged that their due process rights were violated because the statute barred their causes of action before all the necessary elements for a cause of action were present. The *O'Brien* Court, at 15, citing *Oole v Oosting*, 82 Mich App 291; 266 NW2d 795 (1978), observed that "the instant statute is both one of limitation and one of repose" and reconfirmed the broad power of the Legislature to abrogate entirely a common-law right, rejecting the claim that the statute

violated due process because it deprived the plaintiffs of a cause of action unless it accrued within the specified six-year limitation period.[6]

Similarly, this Court in *Sills v Oakland General Hosp*, 220 Mich App 303; 559 NW2d 348 (1996), addressed amendments of the medical malpractice statute of limitations, MCL 600.5838a(2); MSA 27A.5838(1)(2), which convert it into a statute of repose.[7] Citing *O'Brien, supra, Sills* observed that

---

[6] After *O'Brien*, this Court in *Cliffs Forest Products Co v Al Disdero Lumber Co*, 144 Mich App 215; 375 NW2d 397 (1985), followed *O'Brien* in rejecting a due process challenge to the architects and engineers statute, as did *Fennell v John J Nesbitt, Inc*, 154 Mich App 644, 649; 398 NW2d 481 (1986), which found that the Legislature had the power to abrogate a common-law right and that "the intent of the Legislature was that the statute be one of repose." Similarly, the Court found no due process violation in *Johnson v Harnischfeger Corp*, 414 Mich 102; 323 NW2d 912 (1982), where it addressed the statute of limitations contained in MCL 418.361(2)(g); MSA 17.237(361)(2)(g) of the Worker's Disability Compensation Act (WDCA). In that case, the Court found that the statutory requirement that permanent and total loss of industrial use be determined not less than thirty days before the expiration of five hundred weeks from the date of injury did not violate due process because the Legislature made a reasonable choice in relation to a permissible legislative objective. Specifically, the Court found that the statutory requirement "does not come within *Dyke's* [*Dyke v Richard*, 390 Mich 739, 745-746; 213 NW2d 185 (1973)] prescription" and that the Legislature's abrogation of a cause of action after the expiration of a period of limitation was not "an unreasonable exercise of authority" because "the WDCA was, from its inception, designed to abrogate an employee's common-law cause of action." *Johnson*, at 120.

[7] The statute in question, MCL 600.5838a(2); MSA 27A.5838(1)(2), provides in part:

Except as otherwise provided in this subsection, an action involving a claim based on medical malpractice may be commenced at any time within the applicable period prescribed in section 5805 or sections 5851 to 5856, or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later. However, except as otherwise provided in section 5851(7) or (8), the claim shall not be commenced later than 6 years after the date of the act or omission that is the basis for the claim. The burden of proving that the plaintiff, as a result of physical discomfort, appearance, condition, or otherwise, neither discov-

"[a] statute of repose prevents a cause of action from ever accruing when the injury is sustained after the designated statutory period has elapsed," whereas "[a] statute of limitation, however, prescribes the time limits in which a party may bring an action that has already accrued." *Sills*, at 308. In *Sills*, this Court found that the statute was both a statute of limitations and a statute of repose because it "serves both functions: it prescribes the time limit in which a plaintiff who is injured within the statutory period must bring suit and also prevents a plaintiff from bringing suit if she sustained an injury outside the statutory period." *Id.* Citing *Chase v Sabin*, 445 Mich 190; 516 NW2d 60 (1994), the *Sills* Court ruled that the plaintiff failed to meet her burden of showing why the six-year period of repose should not be applied. In addition, *Sills*, citing *O'Brien*, rejected the plaintiff's challenge that the statute violates due process, finding that the statute bears a reasonable relationship to the legislative purposes for a statute of repose. *Sills*, *supra* at 311. Moreover, *Sills* found that due process was not violated because the statute was not so harsh and unreasonable that it effectively denied a plaintiff access to the courts.

As stated in *Detroit Foundries, supra* at 217:

> The concluding language of section 47 limiting actions against directors for conduct below the standard specified to 6 years from the date of delinquency or 2 years from the time of its discovery, "whichever shall sooner occur," radi-

---

ered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim is on the plaintiff. A medical malpractice action that is not commenced within the time prescribed by this subsection is barred.

cally alters the periods of limitations which would other-
wise apply to actions against directors either for negligent
conduct or fraud. CLS 1956, § 609.13  (Stat Ann 1959 Cum
Supp § 27.605) , and CLS 1956, § 609.20 (Stat Ann 1959 Cum
Supp § 27.612).

By explicitly referring to CLS 1956 § 609.20, the
fraudulent concealment statute that was the prede-
cessor to MCL 600.5855; MSA 27A.5855, *Detroit
Foundries* held that the Legislature had removed the
application of the fraudulent concealment statute
from § 47, even though it may have produced an
anomalous result.[8] Given that the Legislature is pre-
sumed to act with knowledge of appellate court statu-
tory interpretations, *Gordon Sel-Way, Inc v Spence
Bros, Inc*, 438 Mich 488, 505; 475 NW2d 704 (1991),
and that silence by the Legislature for many years fol-
lowing judicial construction of a statute suggests con-
sent to that construction, we must conclude that the
Legislature has endorsed the construction of *Detroit
Foundries* that the current fraudulent concealment
statute, MCL 600.5855; MSA 27A.5855, is likewise
not applicable to claims that are governed by § 541a,
the successor to § 47 of the repealed General Corpo-
ration Act. Despite the Legislature's ability to change
the statutory language or disapprove of *Detroit Foun-
dries*, it has essentially acquiesced in that decision for
more than thirty-five years. *Brown v Manistee Co Rd
Comm*, 452 Mich 354, 365; 550 NW2d 215 (1996).

---

[8] As *Detroit Foundries, supra* at 214, noted: "We are told by defend-
ants, in effect, that a director can enrich himself by fraudulently diverting
to himself his corporation's business opportunities and using its plant,
equipment, facilities, funds, and personnel, and be free from any liability
to the corporation therefor if he can manage to keep control of the corpo-
ration so that it cannot sue him for at least 6 years after the plunder." The
Court's holding affirmed that view.

Consequently, any claims against corporate officers and directors that are subject to the limitation period found in § 541a(4) are barred more than three years after the date of the occurrence, regardless of when the plaintiff learned of the breach of duty and despite the fact that corporate officers and directors may have fraudulently concealed the occurrence.

III

Notwithstanding that plaintiffs' shareholder derivative and shareholder oppression claims in these cases are subject to the limitation period contained in § 541a, they claim that the trial court erred in applying the two-year discovery period to their claims in Docket No. 188874 that M. J. Moroun breached his fiduciary duties to the corporation and oppressed them as minority shareholders in the PAM acquisition by diverting corporate opportunities for the benefit of his son and by using CenTra's assets for his own personal benefit.

PAM, a holding company whose subsidiary operates an Arkansas trucking company, previously had some business with Central Transport, Inc., a subsidiary of CenTra. In 1989, when PAM was on the verge of bankruptcy, two blocks of stock were offered for sale. PAM itself was selling two million shares of common stock as well as warrants to acquire an additional 3,092,000 shares, which together amounted to a controlling interest in the company. In addition, the family of founding shareholder, Paul Maestri, was selling 2.5 million shares of common stock. According to defendants, PAM also offered for sale a newly created class of voting preferred stock, which had been approved by a vote of PAM's stockholders and which

included the sale of exercisable warrants to purchase approximately three million shares of PAM's common stock. In 1989, PAM and the Maestri family had sought to sell their respective blocks of stock to another purchaser, but the proposed sale fell through.

Plaintiffs allege that, although CenTra had the opportunity to purchase the controlling or a substantial interest in PAM, CenTra, under M. J. Moroun's direction, passed on that opportunity without consulting CenTra's board so that the opportunity could be usurped by his son, Matthew Moroun. In December 1989, Lech prepared an agreement to have Matthew Moroun's trust acquire the common shares of PAM and sent the agreement to A. A. Moroun, as trustee of Matthew Moroun's trust, for her approval. In response, plaintiffs' counsel wrote to M. J. Moroun informing him that "Anne cannot execute the Agreement without receiving complete information regarding PAM Trucking and the terms and conditions of the proposed acquisition." The letter also stated:

> Furthermore, it is our position that the PAM Trucking acquisition is within the scope and purview of the business of CenTra, Inc., and its affiliates (the "Company"). If you proceed with the acquisition by the Trust or otherwise, you will be expropriating a corporate opportunity in violation of your fiduciary duty to the shareholders of the Company.
>
> Although Anne and her sisters have consistently tried to cooperate with you in furthering the best interest of the Company and its shareholders, you have repeatedly withheld information from them and have negotiated and entered into transactions which are clearly not in their best interests. On behalf of Anne and her sisters, as shareholders of the Company, we hereby demand that you immediately provide full and complete information regarding PAM Trucking and the proposed acquisition.

The letter added that if there were reasons why Cen-Tra and its affiliates should forgo the corporate opportunity, then it should be offered to CenTra's shareholders on a pro-rata basis.

When A. A. Moroun refused to approve the acquisition by Matthew Moroun's trust, MJM, a limited partnership in which Matthew Moroun's trust was a limited partner, entered into the stock purchase with the Maestri family on December 28, 1989, buying 2.5 million shares of common stock for $627,678.25. However, on the same date, Central Transport, a subsidiary of CenTra, purchased from PAM itself $3 million in preferred stock, along with the warrants to purchase additional common stock. Plaintiffs claim that, at the time, neither they nor their counsel were aware of the existence of MJM, the Maestri family, its block of PAM stock, or that two distinct blocks of PAM stock were for sale, but only that M. J. Moroun proposed to use his son's trust to acquire the stock or assets of PAM. Plaintiffs also claim that they first learned that MJM had acquired 2.5 million shares from the Maestri family in April 1991, when Baks received PAM shareholder proxy materials after she and her husband purchased shares in PAM on the open market.

The trial court ruled that plaintiffs' claim of breach of fiduciary duty in connection with the PAM acquisition accrued by the end of December 1989, when plaintiffs learned that Moroun and Lech declined to have CenTra purchase the Maestri shares in PAM in favor of Matthew Moroun's trust, even though M. J. Moroun abandoned that plan and instead arranged to

have MJM purchase the Maestri shares on December 29, 1989.[9] At the motion hearing, the trial court found:

> [The December 22, 1989, letter from plaintiffs' counsel] exhibits knowledge that, one, PAM stock was for sale, two, the company was not purchasing the stock, three, Moroun sought to purchase the stock, four, plaintiffs felt it was a corporate opportunity that should have been offered to shareholders and five, for Moroun to pursue the stock purchase would be a breach of his fiduciary duty. As noted by defendants, at the time defendant Moroun allegedly passed on the corporate opportunity in favor of his or his son's personal interest, he had in fact breached his fiduciary duty and had a legal cause of action at that time.

According to plaintiffs, the alleged wrong (the usurpation of the corporate opportunity to acquire PAM) did not occur until MJM actually purchased the PAM stock, which, plaintiffs alleged, happened between late July and October 1990. Plaintiffs also contend that there was a triable issue of fact whether their claim accrued when they learned about defendants' breach of the fiduciary duty in April 1991 by reading PAM's proxy statement. Thus, plaintiffs contend that, because there was a genuine issue of material fact regarding whether the claim accrued within two years of the September 1992 complaint, this Court should reverse the PAM order and remand for further pro-

---

[9] In so ruling, the trial court relied on MCL 600.5827; MSA 27A.5827, which provides:

> Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838, and in cases not covered by these sections *the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.* [Emphasis supplied.]

ceedings to resolve the disputed issues of material fact.

Contrary to plaintiffs' claim, we conclude that the trial court correctly observed that the alleged wrong occurred when defendants rejected the acquisition of the Maestri shares for CenTra in favor of arranging acquisition by Matthew Moroun's trust. Although plaintiffs contend that the December 22, 1989, letter did not establish their knowledge of the five crucial facts attributed to them by the trial court because they were under the impression, at least until April 1991, that the corporate opportunity had not been usurped by Moroun, the trial court properly inferred that plaintiffs knew, or should have known, by the end of December 1989 that Moroun and Lech had breached their fiduciary duty to CenTra by seeking to expropriate an alleged corporate opportunity of Cen-Tra. Although plaintiffs claim that they thought that M. J. Moroun had complied with his fiduciary duty, satisfactorily responding to the letter, when his son's trust did not purchase the stock, the facts indicate otherwise. Given plaintiffs' knowledge that M. J. Moroun had "repeatedly withheld information from them and [had] negotiated and entered into transactions which are clearly not in their best interests" and that plaintiffs had demanded "full and complete information regarding PAM Trucking and the proposed acquisition," it is disingenuous for plaintiffs to claim that they simply trusted their brother to have abandoned his plan to expropriate a corporate opportunity when Matthew Moroun's trust did not purchase the stock, particularly because he did not act in accordance with the letter's demand by providing "full and complete information regarding PAM Trucking." Thus,

we agree with the trial court that it was the simple failure by M. J. Moroun to offer to CenTra the corporate opportunity to purchase the shares that creates a possible cause of action, thus triggering the running of the two-year discovery provision contained in § 541a(4).[10]

But even assuming that there was a genuine dispute concerning when plaintiffs actually knew about MJM's acquisition of the Maestri family shares, and that such an acquisition was part of a well-camouflaged plan by M. J. Moroun and Lech to divert the corporate opportunity from CenTra and its subsidiaries, there is an independent basis for concluding that plaintiffs' claim for breach of fiduciary duty accrued by the end of December 1989. As directors of both CenTra and Central Transport during the entire

---

[10] The trial court's conclusion that plaintiffs' cause of action accrued in December 1989 is supported by *Solowy v Oakwood Hosp Corp*, 454 Mich 214; 561 NW2d 843 (1997). In *Solowy*, at 222, the Court, observing that the "possible cause of action" standard established in *Moll v Abbott Laboratories*, 444 Mich 1; 506 NW2d 816 (1993) (a pharmaceutical products liability case), and *Gebhardt v O'Rourke*, 444 Mich 535, 510 NW2d 900 (1994) (legal malpractice), was "not specific to those types of claims" and applied broadly to "other types of tort suits that are subject to the discovery rule," held that the six-month discovery rule period begins to run in medical malpractice actions when the plaintiff, on the basis of objective facts, is aware of a possible cause of action, i.e., of an injury and a possible link between the injury and an act or omission of the physician. In that case, the Court ruled that where the plaintiff learned that she "possibly" had recurring skin cancer, she had to bring her malpractice suit within six months of discovering the possibility. According to the Court, the plaintiff should have discovered a possible cause of action when she became "aware that her symptoms were identical to those she experienced five years earlier" on the advice of her second doctor that her injury "could be a recurrence of cancer." *Solowy*, at 233. Similar to *Solowy*, plaintiffs' cause of action accrued in December 1989 because, on the basis of objective facts, plaintiffs discovered, or should have discovered, a "possible cause of action," i.e., an injury (CenTra's loss of a corporate opportunity) and a possible causal connection (M. J. Moroun's expropriation of the corporate opportunity).

time that the PAM acquisition was being negotiated and consummated, plaintiffs were chargeable with the full knowledge of the conduct of the affairs of the corporations. See *Carnahan v M J & B M Buck Co*, 250 Mich 198, 200; 229 NW 513 (1930); *Lorren v Baroda Mfg Co, Inc*, 334 Mich 405, 409; 54 NW2d 702 (1952), and MBCA § 487, which establishes the right of any corporate shareholder of record [§ 487(2)] or corporate director [§ 487(4)], in person or by attorney or agent, to inspect inter alia the corporation's books and records upon written demand (assuming various prerequisites are fulfilled, such as conducting the inspection during the usual business hours, a power of attorney, and so forth). Plaintiffs were directors of both CenTra and Central Transport, and thus were chargeable with knowledge regarding the transactions that was available in the corporate books and records. Thus, plaintiffs should have discovered defendants' breach of fiduciary duty regarding the PAM acquisition by December 1989, on the basis of their status as corporate directors. Therefore, whether plaintiffs knew about M. J. Moroun and Lech's breach of their fiduciary duty regarding the PAM acquisition by December 1989, on the basis of their knowledge as contained in the letter or as corporate directors, the trial court did not err in concluding that the two-year discovery provision found in § 541a(4) began to run by December 1989, and that plaintiffs' claim in connection with the PAM acquisition expired before they filed their September 1992 complaint.

IV

Plaintiffs also contend that the trial court erred in applying the limitation period set forth in § 541a(4) to their claims in count II of their third amended complaint in which they allege that M. J. Moroun and Lech breached an express or implied contract to perform their duties as officers and directors of CenTra. Plaintiffs allege that because M. J. Moroun's usurpation or diversion of corporate opportunities constituted a breach of the stock restriction agreement, their claims sound in contract and are thus subject to the six-year limitation period for breach of contract. MCL 600.5807(8); MSA 27A.5807(8).[11] We disagree. A perusal of count II reveals that plaintiffs did not state a claim of breach of the stock restriction agreement, but only alleged that M. J. Moroun and Lech breached an express or implied contract to perform their duties as officers and directors of CenTra. Further, there is no merit to plaintiffs' contention that M. J. Moroun breached the agreement in his individual capacity, because he owed plaintiffs fiduciary duties only by virtue of his capacity as *a corporate director and officer*. Moreover, as defendants observe, had plaintiffs wanted to state a claim of breach of the stock restriction agreement in count II, then plaintiffs easily could have referred to the stock restriction agreement therein. Finally, the fact that count II also states claims of breach of contract against Lech and Harned

---

[11] Although plaintiffs only raised this issue below in connection with the PAM claims in Docket No. 188874, we consider this issue with regard to the claims in Docket No. 184794 as well because the issue is one of law for which all necessary facts were presented for meaningful review. *Providence Hosp v Nat'l Labor Union Health & Welfare Fund*, 162 Mich App 191, 194-195; 412 NW2d 690 (1987).

as well, even though they did not sign the stock restriction agreement, indicates that plaintiffs intended count II to be based on Moroun's contractual breach of his agreement with CenTra, not his breach of the stock restriction agreement.

V

Finally, plaintiffs contend that the trial court's denial of their claim that defendants waived the statute of limitations defense in a stipulated order violated the law of the case doctrine. However, because no prior appellate opinion decided any issues in this case, the doctrine is inapplicable to the trial court's ruling in the instant case.[12]

CONCLUSION

Accordingly, we affirm the trial court's orders.[13] We conclude that in Docket No. 184794, the trial court

---

[12] Even if the doctrine were applicable, we note that there was no prior decision to be applied as the law of the case. Although plaintiffs seek to apply the trial court's oral ruling regarding the interpretation of the stipulated order, no written order based on that oral opinion was entered in these cases. *Tiedman v Tiedman*, 400 Mich 571, 576; 255 NW2d 632 (1977). Finally, a review of a stipulation in writing signed by defendants or made in open court as required by MCR 2.507(H), and fairly construed as plainly relinquishing such a defense, *Wilson v Gauck*, 167 Mich App 90, 95; 421 NW2d 582 (1988), and cases there cited, has not been presented.

[13] We reject the reasoning of the dissent. The dissent's assertion, *post* at 502, that "another section of the act . . . specifically references the standard of care described in § 541a(1)" is incorrect. Section 554, MCL 450.1554; MSA 21.200(554), references only § 551; § 551 tangentially refers to § 541a merely to note that if a director has fulfilled the duties created by § 541a, then there can be no problem under § 551, and therefore, no cause of action under derivative § 554.

The dissent's suggestion, *post* at 502, that the jurisdiction and venue provisions in § 489(1) "merely supplement implicit references to jurisdiction and venue in [other sections of] the act" is likewise incorrect. Section 514, MCL 450.1514; MSA 21.200(514), addresses jurisdiction and venue of the circuit courts in exercising their visitorial powers over domestic corporations; § 773, MCL 450.1773; MSA 21.200(773), deals with the same

properly dismissed the claims involving Lakeshore, AMMEX, and MJM that were based on transactions that occurred before September 30, 1989. Further, in Docket No. 188874, the trial court properly granted defendants' motion for partial summary disposition under MCR 2.116(C)(7) regarding the PAM acquisition, with the exception of plaintiffs' claim regarding the PAM warrants.

Affirmed.

---

subject with regard to the liquidation of the shareholdings of dissenting shareholders when there is a merger or acquisition; § 851, MCL 450.1851; MSA 21.200(851), is similar with regard to liquidations. These provisions, all of which address jurisdiction and venue, would, according to the dissent, all be superfluous; to the contrary, all are necessary because each deals with jurisdiction and venue with regard to a different and distinct type of action or situation.

The dissent's assertion, post at 503, that "the shareholders of a closely held corporation participate in the management of the corporation" is not necessarily true. While it is certainly more common that shareholders in closely held corporations are involved in the business, this is neither required by law nor is it universally true (the most obvious contrary case is when the founder of such business retires without simultaneously disposing of the founder's holdings). Hence, all the remainder of the dissent, which depends on this distinction, is predicated on a faulty premise.

Furthermore, the notion that more than one instance of misconduct is necessary to invoke § 489(1) is unsound. One instance of illegal, fraudulent, wilfully unfair or oppressive conduct could certainly suffice as a basis for judicial relief. Whether the conduct was the plundering of profit by grossly exorbitant salaries for those controlling the business, the refusal to pay dividends from retained earnings (another means of oppressing those not receiving salary income from the business), or the waiver of corporate opportunities to permit other entities controlled by one or more directors to profit from such opportunities, just one instance might convince a court exercising visitorial power to award appropriate equitable or monetary relief. One incident, if sufficiently egregious, could surely suffice. See Radtke v Everett, 442 Mich 368, 394 ff; 501 NW2d 155 (1993); Champion v Nation Wide Security, Inc, 450 Mich 702; 545 NW2d 596 (1996). There is no language in the statute that suggests that only two or more incidents of a breach of fiduciary duty are necessary to establish a cause of action; compare the language of the Organized Crime Control Act of 1970, which does require two or more predicate acts to establish an actionable "pattern of racketeering activity." 18 USC 1961(5).

WAHLS, P.J., concurred.

HOEKSTRA, J. (*dissenting*). I respectfully dissent because I disagree with the majority's conclusion in section I, which is that the statute of limitations applicable to a cause of action brought by shareholders of a closely held corporation is the same statute of limitations applicable to a cause of action brought by shareholders of a publicly held corporation. Accordingly, I would conclude that the six-year period of limitation of MCL 600.5813; MSA 27A.5813 is applicable to a suit brought pursuant to § 489 of the Business Corporation Act, MCL 450.1489; MSA 21.200(489), rather than the shorter limitation period set forth in § 541a(4) of the act, MCL 450.1541a(4); MSA 21.200(541a)(4).

To reach its conclusion that the shorter limitation period is applicable, the majority relies upon our Supreme Court's holding in *Detroit Gray Iron & Steel Foundries, Inc v Martin*, 362 Mich 205; 106 NW2d 793 (1961), as the "key" to unlocking the answer to this question. I believe that reliance on *Detroit Foundries* as controlling authority is improper primarily because *Detroit Foundries* was decided several years before the Legislature enacted in 1972 PA 284, the predecessor statute to § 489, which was MCL 450.1825; MSA 21.200(825). Instead, when faced with questions of statutory interpretation, this Court must first determine the Legislature's intent by examining the specific language of the statute. *House Speaker v State Administrative Bd*, 441 Mich 547, 567; 495 NW2d 539 (1993). Our Supreme Court's decision in 1961 may be an aid in this process, but it should not both begin and conclude our analysis.

The majority states that § 489 does not by its terms create a new cause of action. The majority posits that § 489 merely grants shareholders in a closely held corporation standing to bring a derivative action when a director breaches the duty of care described in § 541a and that § 489 sets forth the jurisdiction and venue in which to bring suit. In my view, § 489 creates a new cause of action. Where reasonable minds can differ with regard to the meaning of a statute, judicial construction is appropriate. *Heinz v Chicago Rd Investment Co*, 216 Mich App 289, 295; 549 NW2d 47 (1996).

If the majority's view is correct, then the Legislature could have merely referenced the standard of care established in § 541a for directors of publicly held corporations. Instead, the Legislature provided a different standard of care in § 489. The omission of a provision in one part of a statute that is included in another part should be construed as intentional, *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993), and seeming inconsistencies should be reconciled if possible, *Gross v General Motors Corp*, 448 Mich 147, 164; 528 NW2d 707 (1995). To maintain a suit pursuant to § 489, a plaintiff must show misconduct that is "illegal, fraudulent, or willfully unfair and oppressive." In contrast, to maintain a suit pursuant to § 541a(1), a plaintiff must show conduct that did not conform to three requirements, including that a director act in "good faith," "[w]ith the care [of] an ordinarily prudent person," and in the "best interests of the corporation." These differences belie the majority's conclusion that the holding in *Detroit Foundries* fixes § 541a as providing the definitive standard of care and thereby § 541a(4) as provid-

ing the definitive period of limitation for actions involving either a closely held or a publicly held corporation. Indeed, another section of the act, which specifically references the standard of care described in § 541a(1), nonetheless supplies its own limitation period. See MCL 450.1551; MSA 21.200(551) (establishing a three-year limitation period in § 554, MCL 450.1554; MSA 21.200[544], for suits arising from certain corporate actions).

Moreover, if the majority's view is correct, then the jurisdiction and venue provisions in § 489(1) would merely supplement implicit references to jurisdiction and venue in the act, MCL 450.1514; MSA 21.200(514), MCL 450.1773; MSA 21.200(773), MCL 450.1851; MSA 21.200(851), and more explicit references elsewhere, MCL 600.711; MSA 27A.711, MCL 600.715; MSA 27A.715. In construing a statute, this Court should presume that every word has some meaning and should avoid any construction that would render a statute, or any part of it, surplusage or nugatory. *Altman v Meridian Twp*, 439 Mich 623, 635; 487 NW2d 155 (1992). As far as possible, effect should be given to every phrase, clause, and word. *Gebhardt v O'Rourke*, 444 Mich 535, 542; 510 NW2d 900 (1994). The inclusion of the jurisdiction and venue provisions in § 489(1) indicates to me that the Legislature was establishing a new and separate cause of action for shareholders in closely held corporations.

I am additionally persuaded that the unique characteristics of a suit brought pursuant to § 489 compel this construction. This Court is required to look at the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best

accomplishes the purpose of the statute. *People v
Adair*, 452 Mich 473, 479-480; 550 NW2d 505 (1996).
In general, a closely held corporation differs from a
publicly held corporation in two ways. See Henn &
Alexander, Corporations (3d ed), § 257, p 696;   1
O'Neal's Close Corporations (3d ed), §§ 1.02, 1.08, pp
4-7, 31-34.   The most obvious difference is that a
shareholder who may pursue a suit under § 489 is
unable to escape an oppressive situation by dispens-
ing with shares of ownership in the public arena.
MCL 450.1489(2);   MSA 21.200(489)(2).   Instead, the
shareholder seeking relief is required to seek a judi-
cial dissolution of the closely held corporation or
another    remedy    within    the    statute.    MCL
450.1489(1)(a)-(f);   MSA 21.200(489)(1)(a)-(f).

A second obvious difference is that the sharehold-
ers of a closely held corporation participate in the
management of the corporation, whereas the manage-
ment of a publicly held corporation represents the
shareholders. One tool of a dissatisfied shareholder in
a publicly held corporation is the ability to bring a
lawsuit against a director. In this regard, our Supreme
Court speculated in *Detroit Foundries, supra* at 217,
that the legislative intent in establishing the statute of
limitations in § 541a(4) may have been to ensure that
persons qualified to be directors of Michigan corpora-
tions would step forward because their corporate
conduct would not be challenged after two years fol-
lowing disclosure to interested parties, or within six
years after the conduct occurred. Thus, the shorter
statute of limitation period in MCL 450.1541a(4);
MSA 21.200(541a)(4)   curbs the number of suits
brought for harassment purposes and protects direc-
tors of publicly held corporations from any languish-

ing fear of such suits. Nonetheless, in those cases where a director commits misconduct, a shareholder has an appropriate amount of time to discover the facts of the single instance and seek relief pursuant to § 541a.

In contrast, because the shareholders participate in the management of the corporation, the relationship among those in control of a closely held corporation requires a higher standard of fiduciary responsibility, a standard more akin to partnership law. Henn & Alexander, § 268; O'Neal's, §§ 1.02, 1.08. The Legislature highlighted this special duty of care in the language of § 489(1) when it chose the words "illegal, fraudulent, or willfully unfair and oppressive" to describe the "acts" of the defendants. This language does not indicate that a shareholder would be successful in a suit based on one instance of misconduct; rather, a shareholder who would be likely to prevail under this statute is one who presented an ongoing pattern of oppressive misconduct.

These two differences lead me to believe, first, that the Legislature intended to provide shareholders of closely held corporations special relief for ongoing oppression, and second, that the Legislature did not simultaneously intend for such relief to be available only to those shareholders who could satisfy the burden of proof within a short period. The six-year period of limitation in MCL 600.5813; MSA 27A.5813 provides a shareholder an appropriate amount of time to produce proof of a pattern of oppressive conduct and seek relief pursuant to § 489. Therefore, this limitation period best accomplishes the legislative purpose in enacting § 489.

Not only are the purposes of a § 489 suit different from a § 541a suit, but many concrete differences between the two suits also exist. First, as already stated, suits brought pursuant to §§ 489 and 541a redress different injuries. A § 489 suit seeks to redress oppression that injures either the corporation or the shareholder, whereas a § 541a suit seeks to redress wrongs to the corporation. See, e.g., *Moore v Carney*, 84 Mich App 399, 407; 269 NW2d 614 (1978) (analyzing whether attorney fees may be awarded in a suit brought pursuant to the predecessor of § 489 because such fees are awarded only where the suit benefits the corporation). Second, a suit brought pursuant to § 489 is decided differently from a suit brought pursuant to § 541a, which is governed by the standard of conduct explained in *Detroit Foundries, supra.* Although Michigan courts have yet to consider what action constitutes "willfully unfair and oppressive conduct" in suits brought pursuant to § 489, several other states' courts have applied an objective test based on the shareholder's reasonable expectations. Bruno, *"Reasonable Expectations"—A Primer on an Oppressive Standard,* 71 Mich B J 434 (1992). See, e.g., *In re Kemp & Beatley, Inc,* 64 NY2d 63, 73; 473 NE2d 1173 (1984).

Third, §§ 489 and 541a suits involve different parties. The defendants in a § 489 suit may be either the directors or "those in control of the corporation," whereas the defendants in a § 541a suit are only the directors or officers who have breached their fiduciary duty of care. Application of § 492a of the act, MCL 450.1492a; MSA 21.200(492a), to § 541a means that the plaintiffs in a § 541a suit may be either current or former shareholders, whereas the plaintiffs in

a § 489 suit may only be current shareholders. Last, the parties in §§ 489 and 541a suits arrive in different procedural postures. The plaintiffs in a § 489 suit may represent themselves and other similarly situated shareholders and bring their suits as individual or direct actions. The plaintiffs in § 541a suits typically represent the corporation and bring their suits as derivative actions pursuant to § 492a.

In summary, both the language of § 489 and the unique characteristics of § 489 suits compel me to dissent from the majority in this case. I do not believe that the Legislature intended for the statute of limitations governing a cause of action brought by shareholders of a publicly held corporation to also apply to a cause of action brought by shareholders of a closely held corporation. This Court has found that the six-year "catch-all" period of limitation of MCL 600.5813; MSA 27A.5813 applies when the right to recovery arises from a statute. *Nat'l Sand, Inc v Nagel Constr, Inc*, 182 Mich App 327, 337, n 7; 451 NW2d 618 (1990). Therefore, I would conclude that the six-year period of limitation applies to the right of recovery arising from § 489. Accordingly, I would find error in the trial court's judgment that MCL 450.1541a(4); MSA 21.200(541a)(4) applies to this case and would reverse the orders.

I note that my analysis of the applicable statute of limitations provision makes it unnecessary to reach plaintiffs' argument that the trial court erred in applying the two-year discovery period to their claims in Docket No. 188874, which is discussed in section III of the majority opinion. However, if I were required to address this issue, then I would also disagree with the majority and hold that plaintiffs have raised sufficient

disputed facts to preclude the granting of summary disposition in favor of defendants.

In all other respects, I am in full agreement with the majority opinion.