NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0031n.06

Nos. 12-2283/12-2284

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ASHLEY TECHNER, | ) | **FILED** |
| | ) | Jan 15, 2014 |
| Plaintiff-Appellant/Cross-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| HELEN GREENBERG, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee/Cross-Appellant. | ) | |
| | ) | |

Before: DAUGHTREY, GIBBONS, and DONALD, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. Intra-family financial disputes oftentimes seem to end with neither party to the disagreement satisfied with the result reached. So, too, in this litigation, in which both plaintiff Ashley Techner and defendant Helen Greenberg, Techner's grandmother, appeal rulings by the district court on Techner's breach-of-contract and breach-of-fiduciary-duty claims against Greenberg. Techner complains that the district court refused to apply equitable-tolling principles to her claims that would allow her a greater monetary recovery. Although Greenberg agrees with the district court's decision that fraudulent-concealment principles should not have been applied to resurrect claims by Techner that fell outside the applicable statute-of-limitations periods, she submits that the district court nevertheless erred in treating the plaintiff's breach-of-contract allegation as a claim separate from her breach-of-fiduciary-duty cause of action. Because the district court erred in ruling that Techner's breach-of-fiduciary-duty claim could not be extended in the face of Greenberg's fraudulent concealment of the existence of the claim, we

reverse a  portion of the district court's judgment and remand the matter for a recalculation of

damages.

## FACTUAL AND PROCEDURAL BACKGROUND

Following a bench trial in district court, the district judge summarized the relevant testimony

and documentary evidence in this matter in the following findings of fact:

1. Ashley [Greenberg] is Barry [Greenberg]'s daughter.  Barry is the son of Nathan and Helen Greenberg.

2.  On December 22, 1998, Barry formed the Ashley Greenberg Trust.  Barry initially was named Trustee.  Ashley was appointed Trustee in July 2011.

3. Prior to May 4, 1999, Helen, as Trustee of the Helen Greenberg Trust, and Barry formed Greenberg Properties Limited Partnership.  On May 4, 1999, Helen and Barry executed an Operating Agreement which converted the partnership to a limited liability company pursuant to the Michigan Limited Liability Company Act.

4.  The Operating Agreement identifies Helen and Barry as Greenberg Properties' initial managers.  With respect to management of the company, Paragraph 4.1 provides in part:

> The management of the Company shall in all respects be the full and complete responsibility of the Manager.  . . . If more that one Manager has been elected, the group shall act by majority vote . . . .

> The Managers shall devote to the management of the Company as much time as is reasonably necessary for the efficient operation of the Company.

Paragraph 4.2 of the Operating Agreement sets forth limitations on the managers' authority:

> Notwithstanding anything to the contrary contained in this Agreement, the manager shall not, without the unanimous consent of all of the Members:

> (a) take any action in contravention of this Agreement;

(b) take any action that would make it impossible to carry out the purposes of the Company; or

(c) confess a judgment against the Company.

5. On May [4], 1999, Helen, as Trustee of the Helen Greenberg Trust, assigned the trust's Class B Non-Voting Units in Greenberg Properties as follows:

Barry S. Greenberg: 475 Class B Non-Voting Units

Rachel N. Greenberg: 163.33 Class B Non-Voting Units [Ashley's sister]

Ashley L. Greenberg 163.33 Class B Non-Voting Units Agreement of Trust-1998

Steven Granitz: 163.33 Class B Non-Voting Units [Ashley's first cousin]

The Operating Agreement states that profits and losses of Greenberg Properties "shall be allocated to the Members in direct proportion to the number of Units owned by each of them." Paragraph 3.2 further provides that "[d]istributions shall be made . . . subject to the fiduciary requirements of the [Michigan Limited Liability Company] Act and Michigan law generally." Pursuant to these provisions, the Ashley Greenberg Trust is entitled to 16.33% of every distribution authorized by the managers of Greenberg Properties.

6. Barry made the decision when to issue distributions from Greenberg Properties, to which members the distributions would be made, and the amount of the distributions. Initially, distributions were made in direct proportion to the number of Units owned by each member (i.e., in accordance with the Operating Agreement). Beginning around February 2003, however, Barry started to make distributions randomly, based on when a member asked him for money and the amount of money the member needed at the time.

7. Helen was neither consulted about nor aware of the basis for any distributions from Greenberg Properties. Helen did not do anything to manage Greenberg Properties. She did not discuss the management or affairs of Greenberg Properties with anyone, nor supervise Barry's actions in any manner. Helen did not create, receive, review, or request any information regarding distributions from Greenberg Properties. She "assumed" Barry was making proper distributions.

8. At some point in time, Ashley formed the belief that there might be a trust in her grandfather's name of which she was a beneficiary. After her attempts to obtain

information from her father concerning her interest in the trust proved unsuccessful, Ashley had a lawyer contact her father. Barry referred Ashley's lawyer, Ian Pesses, to Robert Schwartz at Raymond & Prokop, P.C. in Southfield, Michigan. On September 7, 2005, Attorney Pesses sent Attorney Schwartz a letter requesting certain information related to "the Trust of which [Ashley] is a beneficiary." Ashley testified that she and Attorney Pesses were seeking information concerning her grandfather's trust, as this was the only trust of which she was aware at that time.

9. In 2008, Ashley filed a petition in the Probate Court for Oakland County, Michigan, in which she sought an accounting of the Nathan Greenberg Trust and alleged that the trustees of the Nathan Greenberg Trust had breached their fiduciary duty to account for the trust funds ("Nathan Greenberg Trust litigation"). *See In re Nathan Greenberg Trust*, No. 292511, 2010 WL 4137461, at *1 (Mich. Ct. App. Oct. 21, 2010) (unpublished opinion). Early in the case, the respondents filed a motion for summary disposition which the probate court granted on March 31, 2009, after finding that there were no remaining assets of the trust to be distributed to the beneficiaries. The court interpreted the Nathan Greenberg Trust Agreement as providing for the distribution of Nathan Greenberg's estate into two separate shares: a family portion and a marital portion. The probate court further interpreted the trust agreement as requiring the distribution of specific assets of the family portion first to Barry and determined that, once the distribution to Barry had been made, there were no further assets to be distributed to the remaining beneficiaries of the family portion. The Michigan Court of Appeals affirmed the probate court's order.

10. At the end of 2005 or beginning of 2006, during the Nathan Greenberg Trust litigation, Ashley requested and received "trust" documents. These documents included the Ashley Greenberg Trust Agreement. This agreement informed Ashley for the first time that there was a trust in her name. The Ashley Greenberg Trust Agreement reflects that the trust's assets were $10.00. On May 22, 2009, Ashley sued Barry in the Circuit Court for Oakland County, Michigan, concerning his administration of the Ashley Greenberg Trust and to determine whether the trust had any further assets ("Ashley Greenberg Trust litigation").

11. During the Ashley Greenberg Trust litigation, Ashley received financial documentation reflecting monies the trust received and expenses paid from the trust's assets. This documentation reflected distributions to the Ashley Greenberg Trust from Greenberg Properties. Ashley testified that this was the first time she became aware of Greenberg Properties. Although distributions from Greenberg Properties were deposited in the bank account for the Ashley Greenberg Trust, Ashley testified that she never saw the bank statements for the trust which were sent to Barry, who was then the trustee. According to Ashley, she had no access to the Ashley Greenberg Trust bank account and in fact did not even know it existed. Barry endorsed the checks made payable to the trust. Payments made by Barry on Ashley's

behalf from the trust account were made directly by him. When Barry sent funds to Ashley directly, he wrote a check to Ashley from the Ashley Greenberg Trust bank account or Ashley's personal bank account, and then sent the funds to Ashley from those accounts.

12. On December 30, 2009 and January 12, 2010, in the Ashley Greenberg Trust litigation and after discovering the payments to the trust from Greenberg Properties, Ashley served the accountant for Greenberg Properties, Ed Rosenbaum, with subpoenas requesting various documents for the limited liability corporation. On January 18, 2010, Rosenbaum responded to the request and delivered to Ashley's attorney, *inter alia*: (1) all tax returns for Greenberg Services, LLC for 1998 and 1999; (2) all tax returns for Greenberg Properties LP or Greenberg Properties LLC for the period 1998-2008; (3) broker statements for Greenberg Properties LLC for 2009; and (4) operating agreements for Greenberg Services, LLC, Greenberg Properties, LP, and Greenberg Properties, LLC.

13. Ashley discovered the Ashley Greenberg Trust's interest in Greenberg Properties as a result of her review of these documents. The documents also alerted Ashley that any distributions from Greenberg Properties to its members were required to be in direct proportion to the number of Units they owned and that Barry, as the corporation's manager, had not made distributions proportionately.

14. At the end of the Ashley Greenberg Trust litigation, an arbitrator found $140,176.00 in distributions that should have been paid from Greenberg Properties to the trust, but were not. The arbitrator awarded the Ashley Greenberg Trust those funds from Barry. That amount, as well as other damages the arbitrator awarded Ashley, were converted to an April 24, 2011 Judgment against Barry totaling $611,237.81.

15. Despite her efforts to collect on the Judgment against Barry, Ashley has recovered only $12,000 of the total award.

16. After the Ashley Greenberg Trust litigation concluded, Ashley asked Barry to step down as the trustee of her trust. He refused. Ashley therefore had to file a separate lawsuit in Michigan Probate Court to remove Barry as the trustee and have a new trustee appointed. The probate judge ultimately removed Barry and appointed Ashley as the trustee of the Ashley Greenberg Trust in July 2011.

17. The distributions due to the Ashley Greenberg Trust from Greenberg Properties during the period from May 1, 2005 through June 1, 2009, have a current value of $59,391.28.

Ashley Greenberg Techner eventually filed suit in Michigan state court against her grandmother, seeking to recover the unpaid proceeds due and owing to the Ashley Greenberg Trust and denominating her claims as ones for breach of contract, breach of fiduciary duty, equitable estoppel, and minority member oppression. Helen Greenberg removed the matter to federal court on diversity-of-citizenship grounds. The district court then conducted a bench trial in the matter, after which the district judge ruled that the defendant did indeed breach both the express terms of the operating agreement of Greenberg Properties, LLC, and her fiduciary duties under the Michigan Limited Liability Company Act, Mich. Comp. Laws Ann. §§ 450.4101–450.5200. As a remedy, the district court ruled that the plaintiff was entitled to damages incurred in the six years immediately preceding the filing of Techner's lawsuit. The district court thus entered judgment in favor of the plaintiff in the amount of $59,391.28.

Believing that she should be entitled to recovery of additional funds not distributed to the Ashley Greenberg Trust over the years, Techner filed this appeal and asserted that Helen Greenberg fraudulently concealed the improper distributions and that Techner thus should be allowed to recover damages incurred prior to that six-year limitations period. Helen Greenberg cross-appealed, maintaining that the applicable statute of limitations that the district court should have imposed was not the six-year breach-of-contract limitations period but the shorter, three-year period provided for in Mich. Comp. Laws Ann. § 450.4404(6) relating to actions "against a manager [of a limited liability company] for failure to perform the duties imposed by [the] act." We have jurisdiction over

these cross appeals pursuant to the provisions of 28 U.S.C. § 1291 and thus proceed to resolve the issues presented.

## DISCUSSION

**Standard of Review**

Ashley Greenberg Techner's appeal and Helen Greenberg's cross-appeal both involve only questions of law. We thus review the decisions made by the district court *de novo*. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 770 (6th Cir. 2013.

*Determination of Limitations Period*

In Count I of her complaint, Techner alleged that her grandmother, as a manager of Greenberg Properties, LLC, breached that entity's operating agreement by failing to allocate distributions of the profits of the company in direct proportion to the number of non-voting "units" each member owned. Such a breach-of-contract claim must be brought within six years of the improper actions. *See* Mich. Comp. Laws Ann. § 600.5807(8).

In Count II, Techner claimed that Helen Greenberg breached her fiduciary duties as a manager of Greenberg Properties, LLC, by, among other things, failing to comply with the requirements of the operating agreement that directed the managers to make proportional distributions of the company's profits and losses. Pursuant to the relevant provisions of Michigan's Limited Liability Company Act, an action against a manager of a limited liability company for

failure to perform required duties, or an action for an award of damages to a member of a limited liability company, must be commenced within three years "after the cause of action has accrued" or within two years after the cause of action is discovered or reasonably should have been discovered, "whichever occurs first." Mich. Comp. Laws Ann. §§ 450.4404(6), 450.4515(1)(e).

The difference in the statutory periods during which causes of action for a breach of contract and for a breach of fiduciary duty imposed by the Limited Liability Company Act may be brought has engendered a preliminary dispute between the litigants. Techner argues that she properly has alleged both a contract claim (breach of contract) with a six-year period in which to initiate litigation and a tort claim (breach of fiduciary duty) that allows her three years "after the cause of action has accrued" to file a lawsuit. Greenberg counters by arguing that any alleged contractual breaches are, in actuality, breaches of the Greenberg Properties, LLC, operating agreement, a document that exists only to effectuate the provisions of the Michigan Limited Liability Company Act. Consequently, Greenberg insists, such "contractual" breaches must be treated as breaches of the defendant's fiduciary duties, subject to the three-year/two-year limit on filing suit contained in Mich. Comp. Laws Ann. § 450.4404(6) and Mich. Comp. Laws Ann. § 450.4515(1)(e). As argued by Greenberg:

> Here, "the exact nature of the claim" for which Plaintiff seeks relief in her breach of contract claim is the same as that imposed on Defendant by the Limited Liability Act. Without the Act, the operating agreement does not exist. Her claim is that Defendant breached duties owed to Plaintiff with respect to distributions made from Greenberg Properties – rights created and existing only because of and through the Act.

> The statutory scheme within which limited liability companies operate is comprehensive and governs the entire relationship between members and managers.

Under Michigan law, "[i]t is well accepted that in ruling on a statute of limitations defense the court may look behind the technical label that plaintiff attaches to a cause of action to the substance of the claim asserted." *Local 1064, RWDSU AFL-CIO v. Ernst & Young*, 535 N.W.2d 187, 189 n.10 (Mich. 1995). Although recognizing that "[i]n some instances, Defendant's alleged breach of her contractual duties also constitutes a breach of her fiduciary duties," the district court here found no problem in allowing Techner to "assert breach of contract *and* breach of fiduciary duty" in her complaint. Indeed, although Techner's contract and tort claims both complain of the non-proportional distributions by the limited liability company's managers, only the breach-of-fiduciary-duty cause of action seeks to impose liability upon Greenberg for "systematically taking a hands-off and disinterested role with the company." Such a quintessential breach-of-fiduciary-duty claim justifies treating the contract and tort causes of action separately and thus applying varying time limits on the claims for monetary recoveries associated with breaches of the respective duties.

Further support for the district court's ruling, and for Techner's position on this issue, can be found in *S-S, LLC v. Merten Building Limited Partnership*, No. 292943, 2010 WL 4679524 (Mich. Ct. App. Nov. 18, 2010), a case in which the Michigan Court of Appeals explicitly held that an operating agreement is "*a contract* between the members of a limited liability company" and, therefore, is to be "construed according to principles of *contract* interpretation." *Id.* at *2 (emphasis

added). In *S-S, LLC*, moreover, the plaintiff, like Techner, alleged both a breach of an operating

agreement and a breach of fiduciary duty. *Id.* at *1. The trial court granted summary judgment to

the plaintiff on the contract claim and the Michigan Court of Appeals affirmed that determination,

*id.* at *1, 2-5, 9, validating the plaintiff's two-pronged attack on the defendant's actions.[1] *See also*

*72-52 Inv. Grp., LLC v. Lodish*, No. 287315, 2009 WL 3491616, at *2, 3-5, (Mich. Ct. App. Oct.

29, 2009) (claim for breach of operating agreement and claim for violation of the Michigan Limited

Liability Company Act considered separately by court). We thus affirm that portion of the district

court's judgment that recognized the viability both of Techner's breach-of-contract claim and her

claim for breach of fiduciary duty.

**Timing of Breach-of-Fiduciary-Duty Claims**

Ordinarily, Techner's breach-of-fiduciary-duty claims should have been filed within three

years after the cause of action accrued or within two years after she discovered, or reasonably should

have discovered, the existence of the cause of action, whichever occurred first. *See* Mich. Comp.

Laws Ann. §§ 450.4404(6), 450.4515(1)(e). Both the defendant and the district court assert that the

---

[1]Greenberg asks us, however, to apply the rationale discussed in *Mostel v. Petrycki*, 885 N.Y.S.2d 397 (N.Y. Sup. Ct. 2009), a decision of the New York County Supreme Court in which that tribunal held that the statute of limitations period applicable to New York's limited-liability-company statute overrode a contrary statute of limitations in the state's Debtor and Credit Law in a cause of action alleging that a withdrawal of funds constituted a misappropriation rather than a "wrongful distribution." Not only are we more inclined to follow the suggestion of a *Michigan* appellate court's interpretation of *Michigan* law than a New York trial court's analysis of New York and Delaware law, but we are also convinced that Techner's claims and Mostel's claims are substantively different. *Mostel* involved a disagreement over whether a single withdrawal of certain funds more properly should be considered a fraudulent conveyance (subject to a six-year statute of limitations) or an LLC distribution (subject to a three-year statute of limitations). By contrast, Techner contends here that some of Greenberg's actions and inactions contravened express terms of a contractual agreement and that other distinct actions or inactions breached fiduciary responsibilities that existed regardless of the terms of the operating agreement.

relevant language of sections 450.4404(6) and 450.4515(1)(e) indicates that those provisions

constitute *statutes of repose* rather than *statutes of limitation*. If they are correct, Techner's breach-

of-fiduciary-duty cause of action was extinguished well before the initiation of her lawsuit on May

16, 2011. In fact, according to Techner's own allegations in her complaint, Greenberg Properties,

LLC, was formed in May1999, and proper distributions of the company's profits were made only

"during [the first few] years of Greenberg Properties['] existence."[2] Thus, if the relevant statutory

provisions are deemed to constitute statutes of repose, any claim for breach of Helen Greenberg's

fiduciary duties could extend back only as far as May 16, 2008, three years prior to the filing of this

lawsuit. Any improper distributions made between early 2003 and May 2008 thus effectively would

be insulated from challenge, review, or recovery.

The district court's conclusion that the statutory provisions constituted statutes of repose

relied in large measure upon the rationale contained in the decisions in *Baks v. Moroun*, 576 N.W.2d

413 (Mich. Ct. App. 1998), *overruled on other grounds by Estes v. Idea Eng'g & Fabricating, Inc.*,

649 N.W.2d 84 (Mich. Ct. App. 2002); and *Trident-Brambleton, LLC v. PPR No. 1, LLC*, No.

1:05cv1423, 2006 WL 1880986 (E.D. Va. July 5, 2006). In *Baks*, the Michigan Court of Appeals

was called upon to examine Mich. Comp. Laws Ann. § 450.1541a(4), a provision of Michigan's

Business Corporations Act containing language that is, in all relevant aspects, identical to the

---

[2]The plaintiff's complaint actually alleges that the improper distributions began approximately two years after the creation of Greenberg Properties, LLC, or in approximately May 2001. The district court's findings of fact, however, state that the improper, non-proportional distributions did not begin until "around February 2003." Schedule 8 of Exhibit D to Helen Greenberg's brief in support of her motion for summary judgment indicates, however, that significant disproportionate distributions to the Ashley Greenberg Trust began in January 2003 and continued through July 2009.

language in Mich. Comp. Laws Ann. § 450.4404(6) at issue here. In fact, section 450.1541a(4)

provides:

> An action against a director or officer for failure to perform the duties imposed by this section shall be commenced within 3 years after the cause of action has accrued, or within 2 years after the time when the cause of action is discovered or should reasonably have been discovered, by the complainant, whichever occurs first.

Despite recognizing that one of the purposes of the Michigan Business Corporation Act is

to protect minority shareholders from oppression, *Baks*, 576 N.W.2d at 419, the Michigan Court of

Appeals nevertheless concluded that the language of section 450.1541a(4) bars any claims against

corporate officers or directors "more than three years after the date of the occurrence, regardless of

when the plaintiff learned of the breach of duty and despite the fact that corporate officers and

directors may have fraudulently concealed the occurrence." *Id.* at 421.

Then, in *Trident-Brambleton*, the United States District Court for the Eastern District of

Virginia took the next logical analytical step and held, in a diversity action applying Michigan law,

that the linguistic similarities between the limitations provisions of the Michigan Business

Corporation Act and the Michigan Limited Liability Company Act supported the conclusion that

sections 450.4404(6) and 450.4515(1)(e) also should be considered statutes of repose, not merely

statutes of limitation. In fact, the district court stated, "[I]t is reasonable to assume that by using

identical language in the Limited Liability Company Act as already existed in the Business

Corporation Act, the legislature intended to give managers of limited liability companies the same

repose that it afforded managers and officers of corporations." *Trident-Brambleton*, 2006 WL 1880986, at *5.

Of course, the conclusion reached by a district judge in Virginia that the provisions of the Michigan Limited Liability Company Act constitute statutes of repose, while persuasive, is not binding on this court in this appeal. The decision in *Virginia M. Damon Trust v. Mackinaw Financial Corp.*, No. 2:03-CV-135, 2008 WL 53230 (W.D. Mich. Jan. 2, 2008), intimates as much. In that case, a district court within the Sixth Circuit was called upon to return to the language of section 450.1541a(4) of the Michigan Business Corporation Act to determine whether that statutory provision constitutes a statute of repose. The district court in *Virginia M. Damon Trust* recognized that *Baks* had concluded "that the statute creates a three-year statute of repose that bars actions three years after the date of the event forming the basis of the action." *Id.*, at *5. Nevertheless, the district court expressed its disapproval of *Baks* and went on to explain as follows:

> This Court is not bound to follow the Michigan Court of Appeals. Rather, this Court is to try to determine what the Michigan Supreme Court would do when faced with the issue. This Court believes that the Michigan Supreme Court would give effect to the unambiguous language of the statute and hold that the first provision of §1541a is a statute of limitations whose time period does not begin to run until Plaintiff's claims have accrued. A statute of repose prevents a cause of action from ever accruing when the injury is sustained after the designated statutory period has elapsed. A statute of limitations, however, prescribes the time limits in which a party may bring an action that has already accrued. In light of this definition – and the plain language of § 1541a – the statute does not create a period of repose, but rather two alternative statutes of limitations. The first provision of the statute states that "an action . . . shall be commenced within 3 years after the cause of action has accrued . . . ." Unlike statutes of repose, § 1541a does not prevent the cause of action from accruing a certain time period after the event; rather, the statute provides a time limit that begins to run *once the claim accrues*. In light of the statute's unambiguous

language, the fact that *Baks* has been overruled on other grounds, and the Michigan Supreme Court's unequivocal distinction between statutes of repose and statutes of limitations, this Court believes that § 1541a does not contain a statute of repose barring claims more than three years after the acts or omissions forming the basis of the claim. Instead, the three-year provision of § 1541a is a statute of limitations whose period begins to run once Plaintiff's claims have accrued.

*Id.* at \*6 (citations and internal quotation marks omitted).

Given the language of sections 450.4404(6) and 450.4515(1)(e) that specifically references commencement of actions "within 3 years after the cause of action *has accrued*," the rationale of the district court in *Virginia M. Damon Trust* makes more logical and linguistic sense than do the contrary decisions in *Baks* and *Trident-Brambleton*.[3] We thus conclude that the statutory sections at issue in this appeal are statutes of limitations, not statutes of repose, and that Techner should have been allowed three years from the date of the accrual of her breach-of-fiduciary-duty cause of action to initiate her lawsuit.

Of course, such a conclusion then raises the question of when a cause of action "accrues" for purposes of the Limited Liability Company Act's statutes of limitations. In *Prentis Family Foundation v. Barbara Ann Karmanos Cancer Institute*, 698 N.W.2d 900 (Mich. Ct. App. 2005), the Michigan Court of Appeals held that "[a] claim of breach of fiduciary duty or breach of trust accrues when the beneficiary knew or should have known of the breach." *Id.* at 908 (quoting *Bay Mills Indian Cmty. v. Michigan*, 626 N.W.2d 169, 176 (Mich. Ct. App. 2001)). Such a conclusion,

---

[3]The result reached in *Virginia M. Damon Trust* also is consistent with Michigan's general accrual-of-claim statute, Mich. Comp. Laws Ann. § 600.5827. Pursuant to that provision, "[e]xcept as otherwise expressly provided, the period of limitations runs from the time the claim accrues."

however, conflicts with other court decisions and would produce an anomalous result in this case that would render much of the language of Mich. Comp. Laws Ann. §§ 450.4404(6) and 450.4515(1)(e) superfluous.

Section 600.5827 of the Michigan Compiled Laws Annotated provides that, except in certain situations not relevant here, "the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." Nevertheless, the Michigan Supreme Court has stated that the phrase "time of the wrong" contained in the statute "specified the date on which the defendant's breach harmed the plaintiff, as opposed to the date on which the defendant breached his duty." *Moll v. Abbott Lab.*, 506 N.W.2d 816, 822 (Mich. 1993). Thus, Michigan's highest court has explained that, in general, claims accrue in Michigan not when a defendant perpetrates a wrong, not when a plaintiff learns or should have learned of the harm done, but rather only when the plaintiff actually suffered damages as a result of the defendant's actions, even if the plaintiff was not yet aware of the harm. As the district court in *Virginia M. Damon Trust* recognized:

> This is consistent with the generally accepted definition of accrue. Black's Law Dictionary, 19 (8th ed. 2004); *Cooey v. Strickland*, 479 F.3d 412, 419 (6th Cir. 2007) ("Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable.").

*Virginia M. Damon Trust*, 2008 WL 53230, at *6.

In this case, under the statutory interpretation announced in *Moll*, the harm suffered by Ashley Techner (the failure to receive proper distributions to the Ashley Greenberg Trust) occurred at the same time that the defendant's wrong (the failure to ensure proper distributions) was perpetrated. Techner's breach-of-fiduciary-duty claim against Helen Greenberg thus accrued in January 2003, and Techner ordinarily would have been required to file her claim against the defendant no later than 2006, or, alternatively, within two years of learning of the breach if that two-year period would have concluded prior to 2006.

Applying such an interpretation to sections 450.4404(6) and 450.4515(1)(e) also makes logical sense. Adoption of the know-or-should-have-known position espoused by Techner and by the Michigan Court of Appeals in *Prentis Family Foundation* effectively writes out of the statutes the provisions providing for commencement of actions within three years of their accrual. If, as argued by the plaintiff in this case, the cause of action for breach of fiduciary duty did not accrue until she discovered, or reasonably should have discovered, she had suffered damages, the two-year provision of those statutes always would be relevant, and the earlier clause in the statutes providing for commencement of actions within three years of accrual would never apply. We should not interpret statutes in such a manner as to render provisions of the enactments superfluous. *See, e.g.*, *Cross v. Gen. Motors Corp.*, 528 N.W.2d 707, 713 (Mich. 1995).

### *Equitable Tolling of Limitations Period for Fraudulent Concealment*

Pursuant to Mich. Comp. Laws Ann. § 600.5855:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

Techner thus claims that the time during which she was allowed to challenge the inaction or misdeeds of the defendant should be extended because of Helen Greenberg's fraudulent concealment of the failure of Greenberg Properties, LLC, to make proper distributions to the Ashley Greenberg Trust. She contends that the defendant's improper concealment of the existence of a claim for breach of fiduciary duty made it impossible for her to become aware of the legal remedies available to her. Consequently, Techner submits that she could file her complaint in this matter at any time within two years from the January 18, 2010, date on which she first became aware of the defendant's failure to ensure proper distribution of company profits to the Ashley Greenberg Trust.

The district court refused to toll the applicable period for filing suit both for a breach of contract and for a breach of fiduciary duty. First, addressing the plaintiff's breach-of-contract claim, the district court stated that for fraudulent concealment to postpone the running of a limitations period, the fraud "must be a concealment produced by affirmative acts or misrepresentations." *Draws v. Levin*, 52 N.W.2d 180, 183 (Mich. 1952). "The plaintiff must show some arrangement or contrivance on the part of the defendant, of an affirmative character, designed to prevent subsequent discovery." *Id.* "Mere silence is insufficient." *Sills v. Oakland Gen. Hosp.*, 559 N.W.2d 348, 352 (Mich. Ct. App. 1996). Thus, because Techner was unable to establish that Greenberg took any

-17-

affirmative act to conceal the plaintiff's cause of action from her, the district court determined that tolling of the statute of limitations for filing the plaintiff's *breach-of-contract claim* was inappropriate. We find no error in that analysis and thus affirm that portion of the district court's judgment holding that the six-year period of limitation on the filing of Techner's breach-of-contract claim, in light of the factual record before the court, could not be extended through application of equitable principles.

The district court did not engage in a similar analysis regarding Techner's plea to extend the time for filing her claim alleging Helen Greenberg's *breach of fiduciary duty*. Instead, having concluded that Mich. Comp. Laws Ann. §§ 450.4404(6) and 450.4515(1)(e) constituted statutes of repose, not statutes of limitations, the district court relied upon established Michigan caselaw holding that the fraudulent-concealment statute does not operate to toll statutes of repose. *See, e.g.*, *Baks*, 576 N.W.2d at 420; *Pukke v. Hyman Lippitt, P.C.*, No. 265477, 2006 WL 1540781, at \*6 (Mich. Ct. App. June 6, 2006). Because we have concluded, however, that Mich. Comp. Laws Annot. §§ 450.4404(6) and 450.4515(1)(e) more properly are classified as true statutes of limitations, equitable principles may be applied to extend the period during which Techner's claims for breach of fiduciary duty could be filed. Moreover, unlike the requirement for the general application of Michigan's fraudulent-concealment statute, the statute's relevance in breach-of-fiduciary-duty cases is not constrained by the necessity of establishing an affirmative act by the defendant, as discussed in *Draws* and *Sills*. Indeed, the Michigan Court of Appeals has held that there is instead "*an affirmative duty to disclose* where the parties are in a fiduciary relationship."

*Lumber Village, Inc. v. Siegler*, 355 N.W.2d 654, 658 (Mich. Ct. App. 1984) (citing *Barrett v. Breault*, 267 N.W. 544 (Mich. 1936)) (emphasis added).

It is thus clear that defendant Helen Greenberg was required to disclose to Techner that proper distributions were not being made by Barry Greenberg on behalf of Greenberg Properties, LLC, to the Ashley Greenberg Trust. This affirmative duty existed regardless of the age of or the level of involvement by the defendant. As long as Helen Greenberg remained a manager of Greenberg Properties, LLC, she was responsible for disclosing to the company's members the distributions made from the LLC's coffers. In light of *Lumber Village*'s pronouncement, because the defendant concealed the improper actions of the limited liability company's managers, the provisions of Mich. Comp. Laws Ann. § 600.5855 should have been applied in this case, allowing Ashley Techner two years from the January 18, 2010, uncovering of the defendant's malfeasance to file suit for breach of fiduciary duty. The plaintiff's recovery from the defendant thus should not have been limited to the distributions that should have been made in only the six years prior to the filing of Techner's complaint in this matter.

## CONCLUSION

The district court erred in treating Mich. Comp. Laws Ann. §§ 450.4404(6) and 450.4515(1)(e) as statutes of repose, rather than as statutes of limitations. By treating those provisions as statutes of repose, the district court improperly foreclosed application of fraudulent-concealment principles to Ashley Techner's breach-of-fiduciary-duty claim. We thus AFFIRM the

district court's judgment in part, REVERSE the decision in part, and REMAND the matter for

recalculation of the appropriate damages amount in accordance with the directives set out in this

opinion.