# STATE OF MICHIGAN

# COURT OF APPEALS

IVAN FRANK, JEFFREY DWOSKIN, PHILLIP
D. JACOKES, ROY KRAUTHAMMER, BLAKE
ATLER, MATT KOVALESKI, JAMES BRUNK,
and IJF HOLDINGS, LLC,

        Plaintiffs-Appellants,

v

JOSHUA LINKNER, BRIAN HERMELIN,
CRACKERJACK, LLC, formerly known as
EPRIZE, LLC, CRACKERJACK HOLDINGS,
LLC, formerly known as EPRIZE HOLDINGS,
LLC, DAVID KATZMAN, GARY SHIFFMAN,
ARTHUR WEISS, CAMELOT-EPRIZE, LLC,
BH ACQUISITIONS, LLC, DANIEL GILBERT,
and JAY FARNER,

        Defendants-Appellees.

FOR PUBLICATION
April 7, 2015
9:00 a.m

No. 318751
Oakland Circuit Court
LC No. 2013-133554-CB

Before: MARKEY, P.J., and MURRAY and BORRELLO, JJ.

MURRAY, J.

This is a limited liability company member oppression case. Plaintiffs' 12-count complaint accuses defendants of member oppression, self-dealing, and related improper conduct with respect to the distribution of proceeds from the sale of plaintiffs' former employer, defendant ePrize, LLC. Plaintiffs also make several ancillary points, including challenges to ePrize's most recent operating agreement and allegations that the founder and former CEO of ePrize, defendant Joshua Linkner, promised not to dilute their interests in that company.

Plaintiffs appeal by right the trial court's order dismissing their claims as time-barred under MCL 450.4515(1)(e), arguing that the trial court erred in considering that statute to be one of repose, and that if the statute is one of limitation, their claims were timely since they did not incur damages until ePrize was sold in August 2012, a date well within the statute of limitations. Defendants' counter that the applicable limitations period ran from the date when ePrize's operating agreement was amended in 2009, and that the applicable statute, as one of repose, bars all of plaintiffs' claims as untimely.

-1-

For the reasons set forth below, we hold that, based on the statute's plain language, the time limit contained in MCL 450.4515(1)(e) is one of limitations and not one of repose. We also hold that plaintiffs' claims accrued in August 2012, and their complaint was therefore timely. Accordingly, we reverse the trial court's order holding to the contrary, and remand for further proceedings consistent with this opinion, which shall include the trial court addressing defendants' alternative motions that were pending at the time the case was dismissed.

## I. BACKGROUND

This case arises out of the sale of ePrize and the prioritized distribution of the sale's proceeds to defendants. As noted, ePrize (the predecessor to defendant Crackerjack, LLC) was founded by Linkner in 1999 as a Michigan limited liability company specializing in online sweepstakes and interactive promotions. It functioned until substantially all of its assets were sold in August 2012. All of the defendants were either members of ePrize or had interests in one of ePrize's corporate members.[1] Plaintiffs are former ePrize employees, some of whom were also former minority members of ePrize. According to defendants, in 2005, those plaintiff-members' interests were consolidated into a holding company known as ePrize Holdings, LLC[2] (the predecessor to defendant Crackerjack Holdings, LLC).

### A. 2007 INVESTMENT – SERIES B NOTES

In 2007, ePrize needed an infusion of cash to fund certain expansion projects and to survive the national economic downturn. To remedy this problem, ePrize sought loans from several of its defendant-members, among others. The loans, called "B Notes," were issued in four stages of that year—January (the "B1 Notes"), July (the "B2 Notes), October (the "B3 Notes") and December (the "B4 Notes"). Another round of borrowing from a recently-formed entity, ePrize Priority, LLC, followed in 2008. These "subordinated debentures" totaled over $28 million on the B Notes alone. Some were convertible to membership interests in ePrize. It is undisputed that neither plaintiffs nor ePrize Holdings were invited to participate in any of these investments.

### B. 2009 INVESTMENT – SERIES C UNITS

By 2009, ePrize was unable to meet its loan obligations and commenced what defendants call a "corporate restructuring." As part of this plan, ePrize refinanced a $14.5 million loan with Charter One Bank, guaranteed by several individual defendants, and issued new "Series C Units" to raise extra cash of $4 million. The Series C Units were offered to certain investors, including the defendant-managers who had obtained B Notes. To participate, investors were required, among other things, to make a capital contribution, guarantee a pro rata share of the Charter One loan, and convert their Series B Notes into new membership units, known as "Series B Units."

---

[1] Defendants Daniel Gilbert and Jay Farner are alleged to control former ePrize member, defendant Camelot-ePrize, LLC.

[2] Defendants refer to this company as "HoldCo."

This arrangement was formally approved in ePrize's Fifth Operating Agreement, executed on March 1, 2009. Among other changes, the Fifth Operating Agreement set forth the new hierarchy of membership-interest payment priority. Under this "waterfall" provision, any distribution would be paid first to the new Series C Units, followed by ePrize Priority's shares and the Series B Units. Last in priority were the common units, which included those held by the plaintiff-members. The waterfall went on to provide that if the full capital commitment were called, the Series C Units would receive the first $68.25 million of any available distribution.

It is this arrangement that plaintiffs claim defendants used "to set themselves up for shockingly excessive returns on investment." With the exception of plaintiff Ivan Frank, plaintiffs claim they were unaware of the preference accorded to Series C Units. But even Frank, whose acquisition of Series C Units will be explained, claims he did not understand the transaction's consequences.

### C. PLAINTIFF IVAN FRANK'S PARTICIPATION

Frank worked was as senior executive at ePrize from 2001 through 2010. During this time, he (and his company, plaintiff IJF Holdings, LLC) acquired both voting and non-voting Units in ePrize and ePrize Holdings amounting to about a one percent stake in ePrize. Frank claims Linkner promised that these shares would never be diluted by future investments.

In 2009, Frank was invited to buy Series C Units with eased investment requirements. Specifically, Frank was not required to participate in the Charter One loan or to guaranty a share of the debt. Frank opted in and invested about $4,200 in a number of Series C Units, bringing his total investment in ePrize to $9,200. Although Frank claims he never saw ePrize's Fifth Operating Agreement or other financial data, he signed all subscription agreements, which confirmed the "restructuring" and waterfall arrangement, as well as the counterpart signature page to the Fifth Operating Agreement. On January 29, 2010, Frank resigned from ePrize. On March 1, 2010, he signed a formal release in exchange for consideration of $111,000.

### D. SALE OF EPRIZE

Having apparently "turned around" ePrize, its managers marketed the company and sold substantially all of its assets to a third party on August 20, 2012, for $120 million. The sale proceeds were then distributed (less expenses and deductions) in accordance with the § 3.1 waterfall provision; however, the available proceeds were sufficient only for distributions to the Series C Unit holders and a number of Series B Unit holders. In total, Series C investors received about $67 million, including the $89,034 Frank received for his share. All other investors received nothing, including Frank for the remainder of his shares, and the rest of plaintiffs, none of whom worked for ePrize anymore.

### II. PROCEEDINGS

On April 19, 2013, plaintiffs initiated suit, alleging that defendants used the recapitalization and Series C Units "to expropriate economic value in the ePrize Companies from the minority members to themselves, and to set themselves up for shockingly excessive returns on investment." Their complaint, as twice amended, sets forth 12 counts, including: member oppression in violation of MCL 450.4515 (Count I), breach of fiduciary duty (Count II),

conversion (Count III), breach of contract (Count IV), tortious interference (Count V), civil conspiracy (Count VI), aiding and abetting (Count VII), fraudulent omission and silent fraud (Count VIII), negligent misrepresentation (Count IX), accounting (Count X), unjust enrichment (Count XI), and piercing the corporate veil (as to Camelot-ePrize) (Count XII). Defendants answered, and after discovery, filed three motions for summary disposition, the latter two set forth in the alternative.

First, defendants argued that the limitations periods of MCL 450.4515 and MCL 450.4404—as statutes of repose—barred all claims under MCR 2.116(C)(7) because none of the alleged wrongful acts occurred after the Series C units were issued in March 2009—a date more than three years before the complaint was filed. Contrary to plaintiffs' position, then, the August 2012 distribution of sales proceeds was merely a ministerial act dictated by the Fifth Operating Agreement and cannot be the date on which plaintiffs' incurred harm. Second, defendants claimed that Frank's claims (and those of his company IJF Holdings) should be dismissed under MCR 2.116(C)(10) where Frank purchased Series C units, approved the Fifth Operating Agreement, executed a release, and never returned his $89,039 Series C distribution. Third, defendants maintained that the non-member plaintiffs (i.e., Dwoskin, Jacokes, Krauthammer, Kovaleski, and Brunk) lacked standing under MCR 2.116(C)(5), (7), and (10), because those plaintiffs only held interests in ePrize Holdings rather than ePrize.

To the first motion, plaintiffs responded that their claims did not accrue until they suffered damages which did not occur until ePrize was sold in August 2012 and therefore were not time-barred. Plaintiffs also argued that the Fifth Operating Agreement was not in effect and that Linkner had separately agreed not to dilute their interests. To the second motion, plaintiffs asserted primarily that defendants had breached the Fifth Operating Agreement and that a question of fact existed regarding whether Frank even executed that document. Finally, the non-member plaintiffs claimed standing under MCL 450.4515 to sue for minority oppression and asserted that, regardless of their interest, their common law and fiduciary duty claims remained intact.

At the conclusion of argument, the trial court held that MCL 450.4404(6) and MCL 450.4515 barred all of plaintiffs' claims as untimely. As the court explained on the record:

> The Court agrees with defendants that plaintiffs were required to file their initial pleadings no later than February of 2012 in order to avoid the maximum three-year repose deadline under MCL 450.4515 and 450.4404, section 6. Here, plaintiffs' claims were filed in April of 2013 and, thus, are untimely.
>
> The Court rejects plaintiffs' arguments directed to the import of the date of August 12, 2012. Even assuming that an accrual analysis would actually apply here, plaintiffs' claims would still be untimely for the reason that the claims accrued no later than March or April of 2009.
>
> When more than the repose period has elapsed before an injury is sustained, the statute prevents a cause of action from even accruing. [Citations omitted.]

-4-

Accordingly, the court granted defendants summary disposition on this ground alone and dismissed all of plaintiffs' claims. This appeal followed.

## III. ARE PLAINTIFFS' CLAIMS TIME-BARRED?

Plaintiffs challenge the trial court's ruling on several grounds, arguing that their claims accrued upon ePrize's sale, that the trial court applied the wrong limitations period, and that their fraudulent concealment claim otherwise tolled the limitations period.

This Court reviews de novo a trial court's ruling on a motion for summary disposition under MCR 2.116(C)(7). *Stoudemire v Stoudemire*, 248 Mich App 325, 332; 639 NW2d 274 (2001). Questions concerning the applicable limitations period, whether the statute was tolled, when the limitations period ended, and the statutory interpretation involved in resolving those questions present issues of law subject to this same standard. *Lear Corp v Dep't of Treasury*, 299 Mich App 533, 536; 831 NW2d 255 (2013) (citations omitted); *Wickings v Arctic Enterprises, Inc*, 244 Mich App 125, 147; 624 NW2d 197 (2000). "In making a decision under MCR 2.116(C)(7), we consider all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict it." *Bryant v Oakpointe Villa Nursing Ctr*, 471 Mich 411, 419; 684 NW2d 864 (2004). Unless a relevant factual dispute exists, summary disposition is appropriate when a claim is time-barred as a matter of law. *Moraccini v City of Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012).

## A. STATUTES OF REPOSE AND STATUTES OF LIMITATION

Critical to resolving whether plaintiffs' claims are time-barred is the determination of when the limitations period began to run. Defendants claim the signing of the Fifth Operating Agreement on March 1, 2009, triggered this period, while plaintiffs argue it was the sale of ePrize on August 12, 2012. The answer lies in whether the applicable period was one of repose (as defendants argue) or one of limitation (as plaintiffs argue).

While statutes of repose and statutes of limitation both create temporal barriers to a claim's viability, each functions differently. "A statute of repose prevents a cause of action from ever accruing when the injury is sustained after the designated statutory period has elapsed. A statute of limitation, however, prescribes the time limits in which a party may bring an action that has already accrued." *Sills v Oakland General Hosp*, 220 Mich App 303, 308; 559 NW2d 348 (1996) (citations omitted). Unlike a statute of limitation, then, a statute of repose "may bar a claim before an injury or damage occurs." *Ostroth v Warren Regency, GP, LLC*, 474 Mich 36, 42 n 7; 709 NW2d 589 (2006) (quotation marks and citation omitted). Of course whether a statute is one of repose or limitation (or both, *Sills*, 220 Mich App at 308) depends on the statute's plain language, *Ousley v McLaren*, 264 Mich App 486, 492; 691 NW2d 817 (2004). If the language is clear and unambiguous, no further construction is permitted. *Tryc v Mich Veterans' Facility*, 451 Mich 129, 135; 545 NW2d 642 (1996). In making this determination, this Court accords terms their ordinary and plain meaning. *Oakland Co Bd of Co Rd Comm'rs v Michigan Prop & Cas Guarantee Ass'n*, 456 Mich 590, 604; 575 NW2d 751 (1998). Dictionaries are particularly helpful in this regard if a statute leaves terms undefined. *Id*.

As noted, the trial court dismissed plaintiffs' claims as untimely under two provisions, MCL 450.4404 (breach of fiduciary duty) and MCL 450.4515 (member oppression). Both are contained in the Michigan limited liability company act ("LLCA"), MCL 450.4101 *et seq*. However, because plaintiffs alleged a number of claims, both under the LLCA and, ostensibly, under the common law, we must first determine which claims the LLCA governs in order to apply the correct period of repose or limitation.

## B. WHICH CLAIMS FALL UNDER THE LLCA?

Although the trial court dismissed all of plaintiffs' claims under the relevant time restrictions in the LLCA, plaintiffs cite only their breach of fiduciary duty and breach of contract claims as falling outside that statute. Consequently, we need only address what statutory limitation period applies to those two claims.

Regarding breach of fiduciary duty, the trial court applied MCL 450.4404. But that provision requires limited liability company managers to discharge their fiduciary duties "in the best interests *of the limited liability company*." MCL 450.4404(1) (emphasis added). Thus, the duty is owed to the company, not to the individual members. See *The Meyer & Anna Prentis Family Foundation, Inc v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 43; 698 NW2d 900 (2005) ("When a fiduciary relationship exists, the fiduciary has a duty to act for the benefit of the principal regarding matters within the scope of the relationship") (citation omitted); Cf. *Remora Investments, LLC v Orr*, 277 Va 316, 322; 673 SE2d 845 (2009) (Virginia statutory law containing similar "best interests of the limited liability company" provision did not provide a basis for member to bring a claim for breach of fiduciary duty directly against another manager or member). The Second Amended Complaint asserts that defendants owed fiduciary duties "directly to the Member Plaintiffs." MCL 440.4404 therefore does not apply here.

Plaintiffs are not in the clear, however. Indeed, in evaluating whether a claim is time-barred, this Court must look to the claim's substance, rather than its technical label. *Local 1064, RWDSU AFL-CIO v Ernst & Young*, 449 Mich 322, 327 n 10; 535 NW2d 187 (1995) (citations omitted). On this score, plaintiffs' fiduciary duty claim specifically accuses defendants of dishonesty, "underhanded" self-dealing, profiteering, and the failure to disclose. Similarly, as described in plaintiffs' brief, their breach of contract claim amounts to Linkner's alleged misrepresentations concerning plaintiffs' return on investment. These do not materially differ from the allegations in plaintiffs' member oppression claim, and fall squarely within the bounds of MCL 450.4515.

Specifically, that subsection permits members of limited liability companies to "bring an action . . . to establish that acts of the managers or members in control of the limited liability company are illegal, fraudulent, or constitute willfully unfair and oppressive conduct toward the limited liability company or the member." MCL 450.4515(1). "[W]illfully unfair and oppressive conduct," means, at least in part, "a continuing course of conduct or a significant action or series of actions that substantially interferes with the interests of the member as a member." MCL 450.4515(2). This does not include conduct permitted by the articles of the organization, the operating agreement or another agreement to which the member is a party, however. MCL 450.4515(2).

Here, the gravamen of plaintiffs' breach of fiduciary duty and breach of contract claims are that their interests *as members* were infringed when defendants obtained a huge return on investment by devaluing plaintiffs' shares in ePrize. The essence of these claims, then (which substantially mirror Count I) is the alleged breach of duties imposed by the member-oppression section of the LLCA. MCL 450.4515 therefore applies.[3]

## C. MCL 450.4515(1)(e)

MCL 450.4515(1)(e) specifically sets forth the time within which a member may bring an oppression claim for damages. That period is either three years after the cause of action accrues or two years after its discovery (or after it should have been discovered), whichever comes first. MCL 450.4515(1)(e) provides in relevant part:

> An action seeking an award of damages must be commenced within 3 years after the cause of action under this section has accrued or within 2 years after the member discovers or reasonably should have discovered the cause of action under this section, whichever occurs first.

Plaintiffs contend this subsection is a statute of limitations and argue that because they sustained no damages until ePrize was sold in 2012, their claims did not accrue until that time. Defendants contend, however, that this subsection is a statute of repose, which cuts off all of plaintiffs' claims—not three years after damages were quantified in 2012—but three years after plaintiffs' shares were allegedly devalued in 2009. The statute's plain language supports plaintiffs' position.

## 1. MCL 450.4515(1)(e) IS A STATUTE OF LIMITATION

Statutes of limitation deal with a claim's accrual, *Sills*, 220 Mich App at 308, and it is this accrual language which triggers MCL 450.4515(1)(e)'s three-year limitation period. Other statutes of limitation are no different. For example, MCL 600.5807 (limiting breach of contract actions) expressly provides that

> No person may bring or maintain any action to recover damages or sums due for breach of contract, or to enforce the specific performance of any contract unless, *after the claim first accrued* to himself or to someone through whom he claims, he

---

[3] Two ancillary points bear mention. First, in support of their breach of fiduciary duty claim, plaintiffs cite case law holding that the proper course of action for certain wrongdoing is to assert breach of the manager's fiduciary duty *to the corporation*. See *Campau v McMath*, 185 Mich App 724, 730; 463 NW2d 186 (1990). But plaintiffs assert harm to themselves as members. Second, as defendants note, the Fifth Operating Agreement contained an integration clause, conclusively demonstrating that it was the final and complete expression of the parties' agreement irrespective of any prior representations. *UAW-GM Human Res Ctr v KSL Recreation Corp*, 228 Mich App 486, 494-496, 502; 579 NW2d 411 (1998). These are not causes of action independent of the member oppression claim.

commences the action within the period of time prescribed by this section. [Emphasis added.]

There is no doubt that this is a statute of limitations. *Miller-Davis Co v Ahrens Constr, Inc*, 489 Mich 355, 357; 802 NW2d 33 (2011). Statutes of limitation found throughout the Michigan Compiled Laws all contain similar "accrual" language. See, e.g., MCL 600.5829 (statute of limitation for "accrual" of claims regarding land); MCL 600.5831 (statute of limitation for "accru[al]" of the balance due upon a mutual and open account); MCL 600.5833 (actions for breach of warranty of quality or fitness "accrue" when the breach is discovered or should have been discovered); MCL 600.5834 (claims by and against common carriers regarding intrastate transportation "accrue" upon delivery or tender of the shipment and not afterwards); MCL 600.5835 (claims on certain life insurance contracts "accrue" at the end of the 7-year presumption of death); MCL 600.5836 ("claims on an installment contract accrue as each installment falls due"); MCL 600.5837 ("claims for alimony payments accrue as each payment falls due.").

In contrast, statutes of repose do not pertain to a claim's accrual; rather, they prevent a claim from ever accruing if a lawsuit is not brought within a certain time after the injury is sustained. The plain language of MCL 600.5839(1)—which our Supreme Court has called "the contractor statute of repose"[4]—clearly makes this point:

(1) A person shall not maintain an action to recover damages for injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective or unsafe condition of an improvement to real property, or an action for contribution or indemnity for damages sustained as a result of such injury, against any state licensed architect or professional engineer performing or furnishing the design or supervision of construction of the improvement, or against any contractor making the improvement, *unless the action is commenced within either of the following periods*:

(a) *Six years after the time of occupancy of the completed improvement, use, or acceptance of the improvement.*

(b) If the defect constitutes the proximate cause of the injury or damage for which the action is brought and is the result of gross negligence on the part of the contractor or licensed architect or professional engineer, 1 year after the defect is discovered or should have been discovered. However, *an action to which this subdivision applies shall not be maintained more than 10 years after the time of occupancy of the completed improvement, use, or acceptance of the improvement.* [Emphasis added.]

---

[4] See *Miller-Davis Co*, 489 Mich at 357-358.

The statute of repose for medical malpractice is the same, clearly cutting off a claim within six years of the act or omission at issue, subject to certain exceptions which are not based on the claim's accrual:

> [A]n action involving a claim based on medical malpractice . . . *shall not be commenced later than 6 years after the date of the act or omission that is the basis for the claim . . . .* A medical malpractice action that is not commenced within the time prescribed by this subsection is barred. [MCL 600.5838a(2) (emphasis added).]

Again, this Court has expressly referred to this statute as one of repose. *Burton v Macha*, 303 Mich App 750, 757; 846 NW2d 419 (2014).

The temporal cutoff provided in the statutes of repose cited previously is not what MCL 450.4515(1)(e)'s plain language provides. Instead, it expressly allows for damages claims to be brought three years after they accrue, or two years after the plaintiff discovered or should have discovered them. Unlike a statute of repose, then, the three-year period of § 4515(1)(e) functions as a statute of limitations because it does not prevent a cause of action from accruing a certain time period after an event. Instead it provides that the time limit begins to run once the claim for damages accrues. In view of the established case law defining both statutes of repose and limitation, this plain language can only be construed as a statute of limitations.[5]

In the face of § 4515(1)(e)'s plain language, defendants maintain that § 4515(1)(e) is a statute of repose. They stake their argument wholly on *Baks v Moroun*, 227 Mich App 472; 576 NW2d 413 (1998), overruled in part on other grounds by *Estes v Idea Eng'g & Fabricating, Inc*, 250 Mich App 270; 649 NW2d 84 (2002), which described an analogous provision in the business corporation act ("BCA"), MCL 450.1101 *et seq.*, as a statute of repose. *Baks*, 227 Mich App at 486 (describing MCL 450.1541a(4) (pertaining to a corporate officer's discharge of fiduciary duties) as a statute of repose).[6]

*Baks* did not *analyze* whether the plain language of the BCA's analogous provision was a statute of repose or limitation, however. That issue was simply not before the Court. Instead, the *Baks* majority simply called the analogous provision's limitations period a statute of repose before proceeding to resolve the central issue of that case, i.e., whether MCL 450.1489 created

---

[5] Because MCL 450.4515(1)(e) is a statute of limitations, plaintiffs' argument that their fraudulent concealment claim tolled the relevant deadline is moot. Similarly, while plaintiffs argue at length that their request for relief otherwise survives under MCL 450.4515(1)(d) (providing for the repurchase of their interests at fair market value), this point is irrelevant given that § 4515(1)(e) is a statute of limitations.

[6] It is well settled—and the parties all agree—that where the BCA and LLCA relate to common purposes, they should be interpreted in a consistent manner. *Duray Dev, LLC v Perrin*, 288 Mich App 143, 159; 792 NW2d 749 (2010).

an independent cause of action for shareholder oppression claims. *Baks*, 227 Mich App at 476. The relevant time period—imported from a different section of the BCA—had nothing to do with this determination. It is for this reason that neither *Estes* (which overturned *Baks'* central holding) nor the *Baks* dissent (which *Estes* adopted) even addressed whether the time period was one of repose or limitation. They simply refer to the time period as a statute of limitation. *Estes*, 250 Mich App at 272, 281; *Baks*, 227 Mich App at 500 (HOEKSTRA, J., dissenting). Again, the *Baks* majority offered nothing more, describing the relevant limiting language as a statute of repose only in conclusory fashion.

This is fatal to defendants' reliance on *Baks*, for it is well established that to decide a question of law, a court must specifically intend to lay down a legal rule governing future cases. *Foreman v Foreman*, 266 Mich App 132, 140; 701 NW2d 167 (2005), quoting *Detroit v Mich Pub Utilities Comm*, 288 Mich 267, 301; 286 NW 368 (1939). To do this, the court must thoroughly consider the issue and directly intend to resolve it. *Foreman*, 286 Mich App at 140; *Detroit*, 288 Mich at 301. Considering this exact point, this Court recited our Supreme Court's application of this standard:

> In *Detroit*, *supra* at 301, our Supreme Court rejected the appellants' argument that a question of law was not decided in a previous case, explaining:
>
> > There is no question that the point was before the court; that the court intended to declare the rule of law for a guide in the future; that there was an application of the judicial mind to the proposition and a thorough consideration of the subject; and that the majority of the court [reached a conclusion] with the clear intent and expressed purpose of determining this issue.
>
> In such circumstances, the prior ruling constituted a binding resolution of the question of law. *Id*. [*Foreman*, 266 Mich App at 140 (alteration in original).]

Long before *Foreman*, our Supreme Court reiterated this point, noting that for a prior ruling to constitute resolution of a question of law, it requires more than just "application of the judicial mind to the subject," but instead must involve, among other things, "fullness of the discussion" of the issue. *McNally v Bd of Canvassers of Wayne Co*, 316 Mich 551, 557-558; 25 NW2d 613 (1947), citing *Detroit*, 288 Mich at 301.

Again, the *Baks* majority did not do this. Rather, it just described the relevant limiting language in conclusory fashion. This is a far cry from declaring a rule of law, let alone a turning of the judicial mind to the subject. For this reason, the *Baks* majority simply denoting the limitations period in an analogous statute as one of repose is incapable of definitively settling that issue. *Baks* does not aid defendants.[7]

---

[7] It bears emphasis that at least two federal courts have expressly declined to apply *Baks* on the ground that the plain language creates a statute of limitation and not a statute of repose. Their

## 2. WHEN DID PLAINTIFFS' CLAIM ACCRUE?

As noted previously, MCL 450.4515(1)(e) expressly requires an action seeking damages to be commenced within three years after the claim "has accrued," or two years after the plaintiff discovered or should have discovered it. Regarding the three year limitation, § 4515 does not define when a claim accrues. Consequently, the general statute of limitations provision, MCL 600.5827, applies, *Moll v Abbott Laboratories*, 444 Mich 1, 12; 506 NW2d 816 (1993), and under that provision a claim accrues "at the time of the wrong upon which the claim is based was done regardless of the time when damage results." The term, "wrong," refers to the date on which the plaintiff was harmed by the defendant's act, not the date on which the defendant acted. *Id*. at 12. Otherwise, a plaintiff's claim could be barred even before he suffered an injury. *Id*. "Accordingly, a cause of action for a tortious injury accrues when all the elements of the claim have occurred and can be alleged in a proper complaint." *Schaendorf v Consumers Energy Co*, 275 Mich App 507, 512; 739 NW2d 402 (2007) (citation omitted).

This is consistent with Black's Law Dictionary's definition of "accrue," which means "[t]o come into existence as an enforceable claim or right; to arise . . . . 'The term 'accrue' in the context of a cause of action means to arrive, to commence, to come into existence, or to become a present enforceable demand or right . . . .' " *Black's Law Dictionary* (7th ed), quoting 2 Ann Taylor Schwing, *California Affirmative Defenses* § 25:3, at 17-18 (2d ed 1996); Cf *Cooey v Strickland*, 479 F3d 412, 419 (CA 6, 2007) ("Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable") (citation omitted).

Here, it was impossible for plaintiffs to establish their claims for damages in 2009 because all that occurred in 2009, if anything, was an alleged breach of the duties set forth in MCL 450.4515(1). Plaintiffs did not suffer harm until 2012, when ePrize's sale occurred and the proceeds were distributed three years later. In other words, although defendants' alleged wrongdoing occurred in 2009, plaintiffs had no claim for damages to enforce in 2009 since they had incurred none. At best, their damages were speculative at that time, and plaintiffs cannot maintain claims for speculative damages. *Bonelli v Volkswagen of America, Inc*, 166 Mich App 483, 511; 421 NW2d 213 (1988) (although mathematical certainty is unnecessary, damages cannot be merely speculative or conjectural).

At least two additional points reinforce this conclusion. First, the Fifth Operating Agreement could have been amended yet again before the sale, in which case plaintiffs

---

holdings rest primarily on an analysis of MCL 450.4515(1)(e)'s plain language, which again, *Baks* did not undertake. See *Techner v Greenberg*, 553 Fed Appx 495, 501-506 (CA 6, 2014); *Virginia M Damon Trust v Mackinaw Financial Corp*, unpublished opinion of the United States District Court for the Western District of Michigan, issued January 2, 2008 (Docket No. 2:03-cv-135); but see *Trident-Brambleton, LLC v PPR No 1, LLC*, unpublished opinion of the United States District Court for the Eastern District of Virginia, issued July 5, 2006 (Docket No. 1:05cv1423) (ruling that MCL 450.4515(1)(e) should be considered a statute of repose based on *Baks*).

conceivably could have suffered no damages and, consequently, no harm. And second, had the defendants' plan failed and had ePrize's assets become worthless, plaintiffs would have had no damages to recover.

Plaintiffs therefore suffered no harm resulting in damages from defendants' alleged wrongdoing until the sale and distributions were made in 2012. It was then that their damages claim accrued. By the same token, plaintiffs could not have discovered their damages until they incurred them in 2012. Their complaint was filed one year later—a time well within either the two *or* three-year period provided in MCL 450.4515(1)(e).

Before concluding, we acknowledge that defendants presented two alternate motions for summary disposition of plaintiffs' claims below. However, because the trial court did not address either one, the appropriate forum for their resolution in the first instance is before the trial court on remand. See *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005) ("Generally, an issue is not properly preserved if it is not raised before, addressed, or decided by the circuit court . . . .") (citations omitted); see also *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006) (it is only under exceptional circumstances that this Court engages in plenary review of issues not decided below, such as when proper determination of the case requires it, the issue involves a question of law and the record contains the necessary facts, and the failure to review the issue would otherwise result in manifest injustice).

## IV. CONCLUSION

Plaintiffs have presented a member oppression claim under MCL 450.4515. Although the trial court held plaintiffs' claims time-barred based on *Baks*, that case's description of analogous language in a different statute was conclusory and as such does not constitute a binding resolution of the issue at hand. More importantly, the plain language of MCL 450.4515(1)(e) confirms that it functions as a statute of limitations. Plaintiffs' claims are therefore timely. Accordingly, we reverse the trial court's order and remand for the trial court to consider defendants' alternative motions and for any further proceedings consistent with his opinion.

We do not retain jurisdiction. No costs, neither party having prevailed in full.

/s/ Christopher M. Murray
/s/ Jane E. Markey
/s/ Stephen L. Borrello

-12-