*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DOMENICA VENTIMIGLIA,

      Plaintiff-Appellant,

v

LISA MANCINI, individually and as trustee of the
LISA MANCINI TRUST, WINDEMERE GROUP,
LLC, WINDEMERE REAL ESTATE, LLC, and
VAN DYKE PARTNERS, LLC,

      Defendants-Appellees.

UNPUBLISHED
October 20, 2022

No. 357458
Macomb Circuit Court
LC No. 2019-003264-CB

Before: RICK, P.J., and O'BRIEN and PATEL, JJ.

PER CURIAM.

In this commercial business dispute, plaintiff appeals as of right the trial court's opinion and order granting summary disposition in favor of defendants Lisa Mancini (Lisa), individually and as trustee of the Lisa Mancini Trust (Mancini Trust), Windemere Group, LLC, Windemere Real Estate, LLC, and Van Dyke Partners, LLC, under MCR 2.116(C)(10). We affirm.

## I. BACKGROUND

This case arises out of disputes related to a family-owned business known as Windemere Park, which consists of an assisted living facility (ALF) and a skilled nursing facility (SNF) in Warren, Michigan. Plaintiff and the Mancini Trust own Windemere Group, with plaintiff holding a 33.33% interest, and the Mancini Trust holding a 66.67% interest. Windemere Group is the sole member of both Van Dyke Partners and Windemere Real Estate. Van Dyke Partners and Windemere Real Estate collectively own and operate Windemere Park, with Van Dyke Partners operating the businesses of the ALF and the SNF, and Windemere Real Estate owning the real property. Lisa is the manager of Windemere Group, Windemere Real Estate, and Van Dyke Partners.

Plaintiff alleges that Lisa and her son, Richard Mancini (Richard), "grossly mismanaged Windemere Park while systematically freezing out [plaintiff] from any major discussion, decisions, and/or opportunities." In particular, plaintiff alleged that in 2019, without plaintiff's

knowledge or approval, Lisa terminated the employment of Legacy Management Services Group, LLC, on the basis of a personal dispute, and replaced it with Mission Point Management Services, LLC, which was run by Roger Mali. Plaintiff further alleged that Lisa did not pursue different opportunities to sell Windemere Park in 2017 and 2018, and that two recent bids received for the property were $14 to $18 million less than the value of Windemere Park previously claimed by defendants. Plaintiff also accused Lisa of not being transparent and forthcoming in response to plaintiff's requests for documentation and financial information regarding Windemere Park.

As relevant to this appeal, plaintiff alleged claims for minority-member oppression under MCL 450.4515, and alleged that Lisa breached her statutory duty of care under MCL 450.4404 and her common-law fiduciary duty to act "in the best interest of Windemere Group" and to refrain from using her position as manager of the company in a manner that inured to her personal benefit. After discovery, defendants moved for summary disposition under MCR 2.116(C)(10). Following a hearing, the trial court agreed that there was no genuine issue of material fact regarding plaintiff's claims and granted defendant's motion, dismissing plaintiff's claims in their entirety.

## II. ANALYSIS

Plaintiff argues that the trial court erred by dismissing her claims for minority-member oppression, breach of statutory duty of care, and breach of common-law fiduciary duty. We disagree.

## A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). The trial court granted defendants' motion under MCR 2.116(C)(10). As explained by our Supreme Court:

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil*, 504 Mich at 160 (quotation marks and citations omitted).]

## B. MINORITY-MEMBER OPPRESSION

Plaintiff first argues that the trial court erred by dismissing her minority-member oppression claim under MCL 450.4515 because she "presented countless examples of willfully unfair and oppressive conduct." Plaintiff concedes that any one alleged incident, by itself, may not give rise to liability under MCL 450.4515, but argues that "the totality of events, continuing for more than three years, suggests a pattern of freezing [plaintiff] out from any meaningful participation with the affairs of [Windemere Park]." We disagree.

MCL 450.4515, which is part of the Michigan Limited Liability Company Act, MCL 450.4101 *et seq*., provides, in pertinent part:

> (1) A member of a limited liability company may bring an action in the circuit court of the county in which the limited liability company's principal place of business or registered office is located to establish that acts of the managers or members in control of the limited liability company are illegal or fraudulent or *constitute willfully unfair and oppressive conduct toward the limited liability company or the member. . . .*

> * * *

> (2) As used in this section, "willfully unfair and oppressive conduct" means a continuing course of conduct or a significant action or series of actions that substantially interferes with the interests of the member as a member. Willfully unfair and oppressive conduct may include the termination of employment or limitations on employment benefits to the extent that the actions interfere with distributions or other member interests disproportionately as to the affected member. *The term does not include conduct or actions that are permitted by the articles of organization, an operating agreement, another agreement to which the member is a party, or a consistently applied written company policy or procedure.* [Emphasis added.]

In *Frank v Linkner*, 500 Mich 133, 151; 894 NW2d 574 (2017), our Supreme Court explained that the harm MCL 450.4515 prohibits is "the substantial interference with the interests of the member as a member." (Quotation marks and alterations omitted.) The Court recognized, however, that willfully unfair and oppressive conduct expressly excludes conduct allowed under an applicable operating agreement, pursuant to MCL 450.4515(2). *Frank*, 500 Mich at 155-156.

In support of her claim that Lisa engaged in willfully unfair and oppressive conduct, plaintiff generally alleged that Lisa "grossly mismanaged" Windemere Park, and asserts that she systematically froze plaintiff out from any discussions or participation in decisions relating to the management of Windemere Park. In particular, plaintiff challenges Lisa's decisions to dismiss Legacy Management and to hire Mission Point without any input from plaintiff. However, Article VIII of the Operating Agreement for Windemere Group, which addresses the management of Windemere Group, names Lisa as the Initial Manager of the company and provides that she "may exercise any power or authority permitted by the [Michigan Limited Liability Company Act], this Operating Agreement, or the Articles that is not otherwise required to be exercised by the Members." Section 8.1 of the operating agreement further provides that "the business and affairs of the Company shall be managed by or under the authority of a board of one or more Managers (Managers)." Lisa's actions in managing Windemere Park, including her decisions to terminate Legacy Management and retain Mission Point, were all squarely within her authority under the operating agreement. Accordingly, to the extent that plaintiff criticizes Lisa for her general management of Windemere Park without plaintiff's input—including her decisions to terminate Legacy Management and retain Mission Point as the management company—those decisions are insulated from plaintiff's challenge under MCL 450.4515(2).

On appeal, plaintiff focuses primarily on her allegation that Lisa did not inform her of potential sale opportunities for Windemere Park. Plaintiff argues that this failure was not permitted by § 7.1(a) of the operating agreement, which provides:

The following specific actions shall be authorized only by the vote or consent of the Members:

a.  a merger, share exchange, reorganization, or similar transaction involving the Company *or a sale of all or substantially all of the Company's assets*[.]  [Emphasis added.]

Plaintiff is correct that the submitted evidence demonstrates that several offers were made to purchase Windemere Park in the years preceding the filing of plaintiff's lawsuit, but is incorrect that § 7.1(a) of the operating agreement required Lisa to consult plaintiff about those offers.  As defendants correctly observe, § 7.1(a) of the operating agreement only requires the vote of members for a sale "of all or substantially all of the Company's assets," which is not what occurred. Although different offers to purchase Windemere Park were received, none of those offers were accepted, and Windemere Park and its assets were never sold.  Accordingly, § 7.1(a) of the operating agreement was never implicated, and the trial court did not err by granting summary disposition in favor of defendants on plaintiff's claim for minority-member oppression.

## III.  BREACH OF STATUTORY DUTY OF CARE

Plaintiff next argues that the trial court erred by granting summary disposition in favor of defendants on her claim for breach of the statutory duty of care under MCL 450.4404 because there were genuine issues of material fact regarding whether Lisa's conduct and actions were made in bad faith.  We disagree.

MCL 450.4404 provides, in pertinent part:

(1) A manager shall discharge the duties of manager *in good faith*, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, *and in a manner the manager reasonably believes to be in the best interests of the limited liability company*.

(2) In discharging the manager's duties, a manager may rely on information, opinions, reports, or statements, including, but not limited to, financial statements or other financial data, if prepared or presented by any of the following:

(a) One or more other managers or members or employees of the limited liability company whom the manager reasonably believes to be reliable and competent in the matter presented.

(b) Legal counsel, public accountants, engineers, or other persons as to matters the manager reasonably believes are within the person's professional or expert competence.  [Emphasis added.]

In *Frank v Linkner*, 310 Mich App 169, 180; 871 NW2d 363 (2015), aff'd in part and rev'd in part on other grounds in *Frank*, 500 Mich 133, this Court held that MCL 450.4404 requires managers of limited-liability companies to exercise their fiduciary duties in the best interests of the limited-liability company.  Accordingly, "the [fiduciary] duty is owed to the [limited liability] company, not to the individual members."  *Frank*, 310 Mich App at 180.  Therefore, to the extent

that defendants assert that plaintiff does not have standing[1] to assert a claim for breach of the statutory duty of care under MCL 450.4404 because Lisa's fiduciary duties were owed to the company and not to the members, this assertion is supported by a reading of this Court's decision in *Frank*.

Even assuming plaintiff had standing to pursue this claim, the trial court did not err by dismissing it. In support of her argument that the trial court erred by dismissing her claim for breach of the statutory duty of care, plaintiff contends that the record demonstrates that Lisa was "incompetent" as a manager. Under the business-judgment rule, however, "courts will refrain from interfering in matters of business judgment and discretion unless the directors or officers 'are guilty of willful abuse of their discretionary powers' or act in bad faith." *Franks v Franks*, 330 Mich App 69, 100; 944 NW2d 388 (2019). See also *In re Butterfield Estate*, 418 Mich 241, 255; 341 NW2d 453 (1983) ("A court should be most reluctant to interfere with the business judgment and discretion of directors in the conduct of corporate affairs."). Thus, while there is evidentiary support for plaintiff's allegation that Lisa was "incompetent" as a manager,[2] there is no evidence that Lisa acted in a manner to willfully abuse her discretionary powers or that she acted in bad faith, and plaintiff has not pointed to specific examples of any such conduct. Accordingly, the trial court did not err by dismissing plaintiff's claim for breach of the statutory duty of care under MCL 450.4404.

## IV. COMMON-LAW BREACH OF FIDUCIARY DUTY

Finally, plaintiff argues that the trial court erred by dismissing her common-law claim for breach of fiduciary duty because there are issues of fact whether Lisa breached her common-law fiduciary duties of care. We disagree.

In *Murphy v Inman*, ___ Mich ___, ___; ___ NW2d ___ (2022) (Docket No. 161454); slip op at 11, our Supreme Court, in the context of deciding whether corporate directors owe fiduciary duties to the shareholders of a corporation, recently stated that a "fundamental tenet of corporate law in Michigan" is that the directors of a corporation owe a common-law fiduciary duty to the shareholders of the corporation. In determining the scope of the fiduciary duty, the Court recognized that "[c]olloquially, directors are required to act with due care, with loyalty, and in good faith." *Id*. at ___; slip op at 12. However, the Court also observed that such "amorphous concepts" do not encompass everything required of a director acting in his or her fiduciary capacity, and that, in the legal context of a corporation, a director "must disclose all material facts within their knowledge that may influence shareholder action," and produce the "best possible

---

[1] The issue of standing focuses on whether a litigant "is a proper party to request adjudication of a particular issue." *Cary Investments, LLC v City of Mount Pleasant*, ___ Mich ___, ___; ___ NW2d ___ (2022) (Docket Nos. 356707, 357862); slip op at 8 n 5.

[2] The evidence demonstrated that Lisa had difficulty with billing practices and maintaining financial records, and that she chose to pay bills later than necessary. It further showed that Lisa relied on Richard when making key management decisions and decisions related to the sale of Windemere Park, despite that neither she nor Richard had a background in either the assisted living or skilled nursing fields.

return" for the shareholder's investment. *Id*. The Court also noted that its expectations of a director acting as a fiduciary will "depend heavily upon context." *Id*.

Plaintiff asserts that Lisa's lack of good faith is evident by her self-dealing when she unilaterally raised her own salary from $36,000 to $80,000, settled lawsuits without input from plaintiff, terminated Legacy Management, and failed to seriously consider viable sales opportunities for Windemere Park. Similar to plaintiff's claim for breach of the statutory duty of care, the business-judgment rule is applicable to plaintiff's claim for breach of common-law fiduciary duties. Thus, courts must refrain from interfering in Lisa's decisions as manager of the limited-liability company unless the record demonstrates that she willfully abused her discretionary powers or acted in bad faith. *Franks*, 330 Mich App at 100. The evidence demonstrated that Lisa increased her salary from $36,000 to $80,000, but did so at Mali's recommendation after Mali explained to her that the state of Michigan would fully reimburse Windemere Park for her salary. The evidence also showed that Lisa, in her capacity as manager of Windemere Park, settled multiple lawsuits against Windemere Park without discussion and input with plaintiff, but those settlements were within her authority as manager, and plaintiff's consent was not required under the company's operating agreement. Lastly, the evidence established that Lisa's refusals to accept offers to purchase Windemere Park were for valid business reasons. The record does not support that any of these decisions were made in bad faith, or that Lisa otherwise abused her discretionary powers. Accordingly, the trial court did not err by granting summary disposition of plaintiff's common-law claim for breach of fiduciary duty.

Affirmed.

/s/ Michelle M. Rick
/s/ Colleen A. O'Brien
/s/ Sima G. Patel

-6-